[No. S087843. July 29, 2002.]

NANCY A. KONIG, Plaintiff and Appellant, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION, Defendant and
Appellant.

744

**COUNSEL**

Nancy A. Konig, in pro. per., for Plaintiff and Appellant.

Sidley Austin Brown & Wood, Jeffrey A. Berman, James M. Harris and Melissa Grant for Employers Group as Amicus Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard M. Frank and Roderick E. Walston, Chief Assistant Attorneys General, Louis Verdugo, Jr., Assistant Attorney General, Catherine Z. Ysrael and Kathleen W. Mikkelson, Deputy Attorneys General, for Defendant and Appellant.

Covington & Burling and Michael A. Listgarten for National Fair Housing Alliance as Amicus Curiae on behalf of Defendant and Appellant.

Law Office of James D. Smith and James D. Smith for Nonprofit Fair Housing, Disability Rights and Legal Services Organizations as Amici Curiae on behalf of Defendant and Appellant.

**OPINION**

**CHIN, J.**—In *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 267 [284 Cal.Rptr. 718, 814 P.2d 704] (*Walnut Creek Manor*), we held that the Fair Employment and Housing Commission's (Commission) award of emotional distress damages to a housing discrimination complainant violated the California Constitution's judicial powers clause (Cal. Const., art. VI, § 1).[1] In this case, we decide whether *Walnut Creek Manor* prohibits such an award under these facts, and whether subsequent amendments to the California Fair Employment and Housing Act (FEHA) (Gov. Code,[2] § 12900 et seq.) have eliminated the constitutional concerns we identified in our 1991 decision. Contrary to the Court of Appeal below, we conclude that *Walnut Creek Manor* is distinguishable, and that the amendments, in particular the judicial option provision (§ 12989), remedy separation of powers concerns over the Commission's authority to award emotional distress damages. (§ 12987, subd. (a)(4).) Thus, we reverse the Court of Appeal's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely taken from the Court of Appeal's opinion.

 Sheryl Annette McCoy, an African-American police officer, inquired about renting a unit at a duplex, which Nancy A. Konig,[3] who is Caucasian, owned. As McCoy read a rental notice posted on Konig's door,

---

[1] "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts, all of which are courts of record." (Cal. Const., art. VI, § 1.)

[2] All further statutory citations are to this code unless otherwise indicated.

[3] Before oral argument, we received notice that Ms. Konig had died. Her death, however, does not affect the Commission's appeal before this court. On issues of great public interest, we have the inherent discretion to resolve the matter despite events which may render the

Konig came to the door and stated to her: "Shame on you. What are you doing on my porch? Get off my porch. You're trying to break into my house." McCoy inquired about the unit, after which Konig responded: "You know you don't want to rent this place. You're here to break in. Shame on you. I'm not going to rent to you. I'm not going to rent to a person like you." Konig then slammed the door in McCoy's face.

To determine whether Konig's response to her was racially motivated, McCoy asked a police officer colleague, Terrence Smith, also African-American, to inquire about Konig's rental. When Smith approached Konig, she ran into her residence, slammed the door, and did not respond to Smith's knocks. Smith left his name, address, and telephone number on a piece of paper, which he slipped into the mail slot as directed by the notice on the door. Konig never contacted Smith.

When the unit was again advertised for rent approximately one year later, the Fair Housing Council of Long Beach sent two female "testers" to Konig's residence to inquire about the unit. Konig discouraged the African-American tester from renting the premises because it was too large. Also, Konig asked whether the tester had given notice at her present residence. The tester said that she had not, but that her landlord had waived such notice. Konig, however, insisted that the tester was not free to leave her present residence because she had not given proper notice. When the tester asked for an application, Konig refused to give her one. In contrast, Konig treated the Caucasian tester with deference, did not ask whether she had given notice at her present residence, and told her to telephone her if she wished to rent the unit.

McCoy became distraught and was humiliated by Konig's insults and rebuff. The event caused McCoy to relive an emotionally painful episode in her life when, at the age of six, she and her family had been victims of racial discrimination at a restaurant. Both McCoy's mother and her colleague, Smith, noticed the adverse effect the incident had on McCoy.

McCoy filed a complaint with the Department of Fair Employment and Housing (DFEH). The DFEH sent Konig a copy of the complaint, along with a Guide for Respondents Accused of Housing Discrimination, issued by the DFEH. This guide stated that "[t]he parties will be given 20 days to elect

matter moot. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1581, fn. 3 [12 Cal.Rptr.2d 476]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 652, p. 682.) Because the issue whether the Commission may award emotional distress damages is of great public interest, we choose to resolve this issue. Also, we have not received any request to abate the action, or to effect a substitution, in light of Ms. Konig's death. Under these circumstances, we have retained the original title of the case.

either to have the issues heard by the Fair Employment and Housing Commission, or to remove the matter to court." The record discloses that neither party elected to remove the matter to court. After a hearing before the Commission, the Commission found that Konig had discriminated against McCoy because of her race. The Commission ordered Konig to cease and desist her discriminatory conduct and to pay McCoy a civil penalty of $10,000, which is the maximum amount permitted under section 12987, subdivision (a)(3), and $10,000 "as actual damages for complainant Sheryl Annette McCoy's emotional distress and lost housing opportunity." Of the $10,000 actual damages award, nominal damages of $1 were for lost housing opportunity. McCoy suffered no out-of-pocket loss.

Konig filed a petition for a peremptory writ of mandate in superior court, contending that the Commission's factual determination that she discriminated against McCoy was erroneous. The court partially granted the petition by striking the $10,000 award for emotional distress and lost housing opportunity on the ground that the Commission was constitutionally prohibited from awarding general compensatory damages for emotional distress under *Walnut Creek Manor, supra*, 54 Cal.3d 245. The Commission appealed, contending that recent amendments to the FEHA, in particular section 12989, rendered *Walnut Creek Manor*'s damages limitation inapplicable. The Commission conceded that it had been awarding emotional distress damages since the 1992 legislation enacting section 12989.

The Court of Appeal affirmed the trial court's judgment. It concluded that section 12989, subdivision (a), which gives both sides in an FEHA administrative proceeding the choice to adjudicate the matter in court, did not render *Walnut Creek Manor* inapplicable in the present case. The Court of Appeal also distinguished *Commodity Futures Trading Comm'n v. Schor* (1986) 478 U.S. 833 [106 S.Ct. 3245, 92 L.Ed.2d 675] (*CFTC*). The Commission relied on *CFTC* to support its contention that the judicial option provision (§ 12989, subd. (a)) obviated the constitutional concerns we expressed in *Walnut Creek Manor*. For reasons that follow, we agree with the Commission and reverse the Court of Appeal's judgment.

DISCUSSION

A. *The FEHA*

The FEHA declares that it is against public policy to discriminate based on "race, color, religion, sex, marital status, national origin, ancestry, familial status, disability, or sexual orientation in housing accommodations . . . . [¶] It is the purpose of this part to provide effective remedies that will

eliminate these discriminatory practices." (§ 12920.) As relevant here, the FEHA expressly states that it is unlawful for an owner of a housing accommodation to discriminate against a person because of race. (§ 12955, subd. (a).) A person subjected to an unlawful practice under the FEHA may file a verified complaint with the DFEH, which investigates the allegations and files an investigative report. (§ 12980, subds. (a), (g).) If, after the investigation, the DFEH issues an accusation against the respondent (§ 12965), the Commission is authorized to hold hearings on the accusation (§ 12981, subd. (c)), and award certain relief to the complainant. (See § 12987.)

Among the authorized forms of relief available to complainants, the Commission may award "actual damages." (§ 12987, subd. (a)(4).) Actual damages are "compensatory damages [that] include nonquantifiable general damages for emotional distress and pecuniarily measurable special damages for out-of-pocket losses." (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 255.) In *Walnut Creek Manor*, however, we held that the Commission's award of unlimited compensatory damages for emotional distress and other intangible injury violated the judicial powers clause of the California Constitution. (*Walnut Creek Manor, supra*, 54 Cal.3d at pp. 265, 267; see also *Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143, 1154, fn. 5 [51 Cal.Rptr.2d 700, 913 P.2d 909] [applying *Walnut Creek Manor*].)

B. *Walnut Creek Manor*

In *Walnut Creek Manor*, the Commission awarded relief to an unmarried African-American prospective tenant who had been discriminated against based on both his marital status and his race. (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 253.) Among other forms of relief, the Commission awarded him special damages for the rent and utilities he had paid in excess of what he would have paid at the apartment denying him residence, punitive damages, and damages for emotional distress under the FEHA. (*Ibid.*) The Court of Appeal struck the emotional distress damages award. (*Id.* at p. 254.) Agreeing with the Court of Appeal, we found that the damages award for emotional distress constituted an exercise of judicial power by a nonjudicial body and thus violated the California Constitution's judicial powers clause. (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 265.)

Our conclusion rested mainly on the "substantive limitations on administrative remedial power" as set forth in *McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 372 [261 Cal.Rptr. 318, 777 P.2d 91] (*McHugh*). (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 265.) After determining that the power to award such damages was statutorily authorized by section 12987,

we addressed the "issue . . . whether the award of substantial emotional distress compensatory damages is 'reasonably necessary' to accomplish the commission's legitimate regulatory purposes and 'merely incidental' to its primary regulatory purposes, or in reality transfers to the agency the judicial function of determining traditional common law claims." (*Walnut Creek Manor, supra,* 54 Cal.3d at pp. 258-259, quoting *McHugh, supra,* 49 Cal.3d at p. 374.) The procedural limitations outlined in *McHugh* concerned the "principle of check," which principle requires judicial review of administrative decisions. (*McHugh, supra,* 49 Cal.3d at p. 374; *Walnut Creek Manor, supra,* 54 Cal.3d at p. 265.)

Applying *McHugh*'s rationale, in *Walnut Creek Manor* we held that the Commission's authority to award emotional distress damages under section 12987 violated the judicial powers clause because "[t]he award of unlimited general compensatory damages is neither necessary to [the FEHA's] purpose nor merely incidental thereto; its effect, rather, is to shift the remedial focus of the administrative hearing from affirmative actions designed to redress the particular instance of unlawful housing discrimination and prevent its recurrence, to compensating the injured party not just for the tangible detriment to his or her housing situation, but for the intangible and nonquantifiable injury to his or her psyche suffered as a result of the respondent's unlawful acts, in the manner of a traditional private tort action in a court of law." (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 264.) We emphasized that the "streamlined and economical administrative procedure" provided under the FEHA would be jeopardized and rendered ineffective if the Commission were authorized to award nonquantifiable emotional distress damages. (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 264.) These awards would "potentially threaten[] to dominate the administrative hearing." (*Id.* at p. 262.) Further, we declined to uphold the emotional distress damages award based only on satisfying the "procedural prong of the *McHugh* standard." (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 265.)

C. *1992 and 1993 Amendments to the FEHA*

After our *Walnut Creek Manor* decision, the Legislature amended the FEHA in several significant respects. (See Stats. 1992, ch. 182, § 19, pp. 924-925; Stats. 1993, ch. 1277, §§ 9, 10, pp. 7518-7522.) The Legislature sought to make the FEHA " 'substantially equivalen[t]' " (Cal. Fair Employment and Housing Com., Enrolled Bill Rep. on Sen. Bill No. 1234 (1991-1992 Reg. Sess.) July 2, 1992, p. 2) to the federal Fair Housing Act and its amendments (42 U.S.C. § 3601 et seq.), and to make the DFEH eligible for certification from the United States Department of Housing and Urban Development (HUD) in order to enforce rights under the federal fair

housing scheme. (See *Broadmoor San Clemente Homeowners Assn. v. Nelson* (1994) 25 Cal.App.4th 1, 7-8 [30 Cal.Rptr.2d 316] [discussion of Assem. Bill No. 2244 (1993-1994 Reg. Sess.), enacted as Stats. 1993, ch. 1277, §§ 9, 10, p. 7518 et seq.]; see generally 24 C.F.R. § 115.200 et seq. (2001) [federal criteria for certifying substantially equivalent state agencies].) As relevant here, the federal Fair Housing Act permits HUD administrative law judges to award damages for emotional distress in administrative hearings. (See 42 U.S.C. § 3612(b), (g)(3); 24 C.F.R. § 180.670(b)(3)(i).)

In 1992, the Legislature amended the FEHA by adding section 12989 (Stats. 1992, ch. 182, § 19, pp. 924-925), which provides the alternative of a civil action to the Commission's administrative proceeding. Subdivision (a) of section 12989 states that "[i]f an accusation is issued under Section 12981, a complainant, a respondent, or an aggrieved person on whose behalf a complaint is filed may elect, in lieu of an administrative proceeding under Section 12981, to have the claims asserted in the charge adjudicated in a civil action under this part." A party must make an election "within 20 days after the service of the accusation, and not later than 20 days after service of the complaint to the respondent." (§ 12989, subd. (b).)

The Legislature also increased the amount of civil penalties available (§ 12987, subd. (a)(3)), and set apart the Commission's authority to award "actual damages" in a separate subdivision. (*Id.*, subd. (a)(4).) Affirming the intent to make the FEHA substantially equivalent to its federal counterpart, the Legislature added that "[n]othing in this part shall be construed to afford to the classes protected under this part, fewer rights or remedies than the federal Fair Housing Amendments Act of 1988 (P.L. 100-430) and its implementing regulations (24 C.F.R. 100.1 et seq.), or state law relating to fair employment and housing as it existed prior to the effective date of this section." (§ 12955.6.)

Although Senate Bill No. 1234 acknowledged our holding in *Walnut Creek Manor*, the 1992 legislation did not address the decision, "nor attempt[] to distinguish its remedy provision from that which was struck down in <u>Walnut Creek</u>." (Cal. Fair Employment and Housing Com., Enrolled Bill Rep. on Sen. Bill No. 1234, *supra*, p. 2.) The Commission's enrolled report acknowledged that "the part of [Senate Bill No.] 1234 which authorizes the [Commission] to award unlimited actual damages could face constitutional challenge." (*Ibid.*) However, the report also surmised that the judicial option provision (§ 12989), allowing either party to remove the case to court, "may protect it from a successful Constitutional challenge . . . . [A] respondent against whom compensatory damages . . . are assessed by the Commission would have a weaker constitutional argument, since it had the choice to

move the case to the court system." (Cal. Fair Employment and Housing Com., Enrolled Bill Rep. on Sen. Bill No. 1234, *supra*, pp. 2-3.)

The 1993 legislation (Stats. 1993, ch. 1277, §§ 9, 10, p. 7518 et seq.) also recognized the effect of *Walnut Creek Manor*'s compensatory damages limitation. At HUD's suggestion, in light of *Walnut Creek Manor* the Legislature amended the FEHA to require that the DFEH advise that a housing discrimination complainant "may only be able to recover damages for emotional distress or other intangible injuries through a civil action . . . ." (§§ 12980, subd. (d), 12981, subd. (g).) Although HUD noted that limiting these damages to a civil action was inconsistent with the federal Fair Housing Act and its amendments (42 U.S.C. § 3601 et seq.), it concluded that giving notice of the limitation to complainants would alleviate this concern. "[S]o long as complainants are made aware of this and can, therefore, make informed decisions as to whether to elect a judicial proceeding, this inconsistency is not problematic." (HUD Asst. Gen. Counsel Harry L. Carey, mem. to Asst. Sect. Gordon H. Mansfield, U.S. Off. of Fair Housing and Equal Opportunity, Aug. 27, 1992, p. 5.) The Commission emphasizes that the Legislature subsequently enacted the judicial option provision (§ 12989), "to remedy the defect in FEHA identified" in *Walnut Creek Manor*. ■ We must decide first whether *Walnut Creek Manor*'s holding—emotional distress damages for housing discrimination are unavailable in an administrative proceeding—is controlling, or otherwise distinguishable. Next, we determine whether the 1992 and 1993 amendments eliminated the concerns identified in *Walnut Creek Manor*.

As the parties observe, *Walnut Creek Manor* did not consider whether either party's ability to opt out of the FEHA administrative proceeding would make a difference in the constitutional analysis. The FEHA's judicial option provision (§ 12989) did not exist at that time. In a footnote we observed, but did not discuss the significance of, a judicial option under the *federal* 1988 Fair Housing Amendments Act, "so that any party who desires a jury trial may remove the case to federal court and there demand a jury." (*Walnut Creek Manor*, *supra*, 54 Cal.3d at p. 262, fn. 11, citing 42 U.S.C. § 3612(a), (o).) Because the issue of the judicial option was not squarely before us, we conclude that *Walnut Creek Manor* is not dispositive on whether the 1992 and 1993 amendments, in particular section 12989, address separation of powers concerns over the Commission's authority to award emotional distress damages.

Like the Commission and its amici curiae, we find persuasive the high court's decision in *CFTC*, *supra*, 478 U.S. 833, which predates both *Walnut*

*Creek Manor* and *McHugh*.[4] Using *CFTC*'s rationale, the Commission and its amici curiae maintain that with the available alternative of a civil action and the requirement that all parties must consent to the Commission's jurisdiction (§ 12989, subd. (a)), "separation of powers concerns are diminished." (*CFTC, supra,* 478 U.S. at p. 855 [106 S.Ct. at p. 3259].)

## D. *CFTC*

In *CFTC*, the United States Supreme Court addressed whether the Commodity Futures Trading Commission's authority to adjudicate common law counterclaims to complaints brought before it violated the judicial powers clause, article III, section 1, of the federal Constitution. (*CFTC, supra,* 478 U.S. at p. 847 [106 S.Ct. at pp. 3254-3255].) The high court identified two distinct aspects of article III: (1) providing the "guarantee of an independent and impartial adjudication by the federal judiciary of matters within the judicial power of the United States" (*CFTC, supra,* 478 U.S. at p. 848 [106 S.Ct. at p. 3255]), and (2) "safeguard[ing] the role of the Judicial Branch in our tripartite system by barring congressional attempts 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts [citation], and thereby preventing 'the encroachment or aggrandizement of one branch at the expense of the other.' [Citations.]" (*Id.* at p. 850 [106 S.Ct. at p. 3256].) While the former aspect constitutes a "personal right" and is thus subject to waiver (*id.* at p. 848 [106 S.Ct. at p. 3255]), the latter implicates a "structural principle" for which "notions of consent and waiver cannot be dispositive." (*Id.* at pp. 850-851 [106 S.Ct. at pp. 3256-2157].)

As relevant here, the high court held that the structural principle of the judicial powers clause was not violated, because the Commodity Futures Trading Commission's "jurisdiction over a narrow class of common law claims as an incident to the [Commodity Futures Trading Commission's] primary, and unchallenged, adjudicative function does not create a substantial threat to the separation of powers." (*CFTC, supra,* 478 U.S. at p. 854 [106 S.Ct. at p. 3259].) In reaching this conclusion, the high court found significant that the respondent—who objected to the Commodity Futures Trading Commission's jurisdiction over the counterclaim—had the choice of filing a complaint in federal court or commencing a reparations proceeding before the Commodity Futures Trading Commission. (*Id.* at p. 855 [106

---

[4]In *McHugh*, we distinguished *CFTC, supra,* 478 U.S. 833. (*McHugh, supra,* 49 Cal.3d at pp. 385-386, fn. 58.) In contrast to the excess rent claim at issue in *McHugh*, the counterclaim in *CFTC* "raised purely 'private' common law disputes 'of the kind assumed to be at the "core" of matters normally reserved to Article III courts.' [Citation]." (*McHugh, supra,* 49 Cal.3d at p. 385, fn. 58.)

S.Ct. at p. 3259].) The high court observed that "Congress gave the [Commodity Futures Trading Commission] the authority to adjudicate such matters, but the decision to invoke this forum is left entirely to the parties and the power of the federal judiciary to take jurisdiction of these matters is unaffected. In such circumstances, separation of powers concerns are diminished, for it seems self-evident that just as Congress may encourage parties to settle a dispute out of court or resort to arbitration without impermissible incursions on the separation of powers, Congress may make available a quasi-judicial mechanism through which willing parties may, at their option, elect to resolve their differences." (*Ibid.*)

Similarly here, the Commission, in housing discrimination cases, deals with a narrow and particularized area of law, i.e., the elimination of discriminatory practices in housing accommodations that are "against public policy." (§ 12920.) Like the Commodity Futures Trading Commission, the Commission's orders are enforceable only by judgment and order of the superior court (§§ 12987.1, subd. (d), 12973, subd. (b)), and are subject to judicial review by way of administrative mandate procedures (§ 12987.1, subd. (a)).[5] (*CFTC, supra,* 478 U.S. at p. 853 [106 S.Ct. at p. 3258]; see *Walnut Creek Manor, supra,* 54 Cal.3d at p. 265 [satisfying the procedural prong of the *McHugh* standard].) In one respect, this case presents an easier question than *CFTC.* Unlike the Commodity Futures Trading Commission, the Commission does not have jurisdiction over common law counterclaims, which are traditionally reserved to the courts. (*CFTC, supra,* 478 U.S. at p. 851 [106 S.Ct. at pp. 3256-3257].) The Commission's jurisdiction is limited to statutory housing discrimination claims brought under the FEHA, and these claims are amenable to adjudicative resolution. (See *West v. Gibson* (1999) 527 U.S. 212, 219-223 [119 S.Ct. 1906, 1910-1913, 144 L.Ed.2d 196] [Equal Employment Opportunity Commission's statutory authority to award compensatory damages].)

As emphasized in *CFTC,* the parties' ability to choose between quasi-judicial and judicial proceedings highlights an important aspect of the constitutional analysis. (*CFTC, supra,* 478 U.S. at p. 855 [106 S.Ct. at p. 3259].) Because both complainants and respondents have the option of adjudicating an FEHA claim in state court (§ 12989, subd. (a)), "the decision to invoke [the administrative proceeding before the Commission] is left entirely to the parties and the power of the [state] judiciary to take jurisdiction of these matters is unaffected." (*CFTC, supra,* 478 U.S. at p. 855 [106 S.Ct. at p. 3259].)

---

[5]Added as part of the 1993 legislation, section 12987.1 expanded a court's remedial powers in this regard beyond that permissible in other administrative mandate proceedings. (§ 12987.1, subds. (a), (b).)

Moreover, we find significant the high court's comparison between arbitration and administrative proceedings in this context. (*CFTC, supra,* 478 U.S. at p. 855 [106 S.Ct. at p. 3259].) Since our decision in *Walnut Creek Manor* in 1991, we have had several opportunities to affirm or reaffirm arbitrators' broad discretion to resolve cases and fashion relief free from judicial review. (See, e.g., *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 788 [94 Cal.Rptr.2d 603, 996 P.2d 706]; *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 776 [94 Cal.Rptr.2d 597, 996 P.2d 699]; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372-376 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Courts generally may not correct arbitration awards, which are both binding and final, even if an award is based on an arbitrator's factual or legal error. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 8-13; but see Code Civ. Proc., §§ 1286.2, 1286.6 [statutory grounds for vacating or correcting arbitration awards].) In contrast, the Commission's awards, as noted, are subject to judicial review and are enforceable only by a court judgment and order. (See *ante,* at p. 753.) Were we to hold that the Commission's authority to award emotional distress damages violated the judicial powers clause—in light of the judicial option provision (Gov. Code, § 12989), which effectively requires the parties' agreement to resolve the issue either judicially or administratively[6] —we would create an unjustified distinction between the authority of arbitrators and that of administrative adjudicators.

The Court of Appeal below, however, distinguished *CFTC* and declined to apply its rationale to this action. The court concluded that deciding the common law counterclaim at issue in *CFTC,* which the high court deemed "an incident to the [Commodity Futures Trading Commission's] primary, and unchallenged, adjudicative function" (*CFTC, supra,* 478 U.S. at p. 854 [106 S.Ct. at p. 3259]), was fundamentally different from adjudicating a claim for emotional distress damages, which we held was "neither necessary to [the Commission's regulatory] purpose nor merely incidental thereto." (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 264.) In distinguishing *CFTC,* the Court of Appeal relied, in part, on the high court's observation that "the parties cannot by consent cure the constitutional difficulty" when a structural principle is implicated. (*CFTC, supra,* 478 U.S. at p. 851 [106 S.Ct. at p. 3256].) Unlike the dissent (dis. opn., *post,* at p. 764), we find that the Court of Appeal's interpretation of *Walnut Creek Manor* was misguided and that its attempt to distinguish *CFTC* is not persuasive.

---

[6]See *CFTC, supra,* 478 U.S. at pages 849-850 [106 S.Ct. at page 3256] (complainant's "election to forgo his right to proceed in state or federal court on his claim and his decision to seek relief instead in a [Commodity Futures Trading Commission's] reparations proceeding constituted an effective waiver"; he "effectively agreed" to the agency's adjudication of the entire controversy).

First, the Court of Appeal failed to give due consideration to the fact that we decided *Walnut Creek Manor* prior to section 12989's enactment.[7] Thus, comparing *Walnut Creek Manor* with *CFTC*, which we find pertinent to the issue of the judicial option provision (§ 12989), is of limited value. Second, although we have discussed *CFTC* and the significance of a judicial option in administrative proceedings (*McHugh, supra,* 49 Cal.3d at pp. 385-386, fn. 58), the Court of Appeal misconstrues the import of that discussion. When we distinguished *CFTC* based on the fact that it dealt with a private common law counterclaim rather than a public excess rents claim (*McHugh, supra,* 49 Cal.3d at p. 385, fn. 58), we did not suggest that the parties' consent to resolve the claim administratively would be meaningless for purposes of the judicial powers clause. (*Ibid.*) Rather, we noted that had the *CFTC* parties *not* consented to resolve administratively the common law counterclaim, which is a claim typically reserved for federal article III courts (as opposed to a reparations claim), the Commodity Futures Trading Commission's resolution of the matter would have violated the federal judicial powers clause. (*McHugh, supra,* 49 Cal.3d at p. 385, fn. 58.) Moreover, the Court of Appeal's emphasis on the statement that "the parties cannot by consent cure the constitutional difficulty" when a structural principle is implicated (*CFTC, supra,* 478 U.S. at p. 851 [106 S.Ct. at p. 3256]) is somewhat misleading. The high court did not state that the parties' consent was irrelevant; rather, it observed that in that context, "notions of consent and waiver cannot be *dispositive*." (*Id.* at p. 851 [106 S.Ct. at p. 3257], italics added.)

### E. *Consistency with Walnut Creek Manor*

Though we did not consider a judicial option in *Walnut Creek Manor*'s constitutional analysis, our analysis here is not inconsistent with that decision. In holding that an award of general compensatory damages is a judicial function and not one properly delegated to an administrative agency, we relied, in part, on *Curtis v. Loether* (1974) 415 U.S. 189, 195-197 [94 S.Ct. 1005, 1008-1010, 39 L.Ed.2d 260], which held that a respondent facing an actual damages award may demand a jury trial in a title VIII housing discrimination matter. (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 262.) In our discussion of *Curtis v. Loether*, we found it significant that the high court distinguished between actual and punitive damages traditionally awarded in a court of law, and equitable relief. (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 262.) In footnote 11, however, we observed that title VIII had subsequently been amended in 1988 to permit administrative awards of "actual

---

[7]Although in 1996 we vacated the Commission's award of emotional distress damages based on *Walnut Creek Manor* (*Smith v. Fair Employment & Housing Com., supra,* 12 Cal.4th at p. 1154, fn. 5), we had no occasion to decide whether the Commission's remedial authority would be constitutional in light of the judicial option provision in section 12989.

damages" for the first time, and to include an option allowing either party to remove the case to federal court and seek a jury trial. (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 262, fn. 11; see *ante*, at p. 751.) Both our discussion and the qualifying footnote indicate that we left open the possibility that, with an analogous option under the FEHA, the Commission might properly award emotional distress damages without violating the judicial powers clause.

In *Walnut Creek Manor* we noted that "the purpose of the [FEHA] was to provide a streamlined and economic procedure for preventing and redressing discrimination in housing as an alternative to the more cumbersome and costly procedure of a civil suit." (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 264.) We recognized that an administrative remedy benefited complainants because, in a court action, respondents "by means of various procedural maneuvers could force the cost of litigation above the plaintiff's expected recovery." (*Id.* at p. 259.) However, with the judicial option provision of section 12989, subdivision (a), respondents now have the ability to *require* complainants to pursue civil remedies in court rather than seek administrative relief.

The Commission, which has candidly admitted having awarded emotional distress damages since 1992, has undoubtedly gained considerable experience in that regard.[8] This experience, along with the Commission's expertise in housing discrimination cases, may go far towards ensuring that its proceedings remain "streamlined and economical." (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 264.) These factors support our conclusion that the Commission's authority to award emotional distress damages to housing discrimination complainants—in light of the judicial option provision of section 12989—does not violate the judicial powers clause.[9] As the high court observed, "were we to hold that the Legislative Branch may not permit such limited cognizance of common law counterclaims at the election of the parties, it is clear that we would 'defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert and inexpensive method for

---

[8]See also section 12970 (Commission's authority to award emotional distress damages in *employment* discrimination cases). After oral argument in response to a question from the bench and the deputy attorney general's answer to it, the Employers Group, amicus curiae for Konig, requested that we take judicial notice of section 12970's legislative history. The Attorney General filed an opposition to this request, and the Employers Group filed a reply to the opposition. We grant the Employers Group's request (Evid. Code, §§ 452, subd. (c), 459), except to the extent the request seeks judicial notice of the Commission's letter to the Governor in support of Senate Bill No. 827 (1990-1991 Reg. Sess.), which the Governor subsequently vetoed. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5 [48 Cal.Rptr.2d 1, 906 P.2d 1057].)

[9]Based on our holding, we need not and do not discuss the Commission's additional arguments.

dealing with a class of questions of fact which are peculiarly suited to examination and determination by an administrative agency specially assigned to that task.'" (*CFTC, supra*, 478 U.S. at p. 856 [106 S.Ct. at pp. 8259-8260].)

Furthermore, subsequent legislative enactments, in addition to section 12989, support our view that separation of powers concerns have been eliminated. In the provision governing those remedies the Commission may award complainants (§ 12987, subd. (a)(4)), the Legislature did not amend the term "actual damages," despite our holding that the term included general compensatory damages and that authorizing their award violated the judicial powers clause. (*Walnut Creek Manor, supra*, 54 Cal.3d at p. 266.) Also, as noted, section 12989's legislative history reveals that the Commission believed that "a respondent against whom compensatory damages . . . are assessed by the Commission would have a weaker constitutional argument, since it had the choice to move the case to the court system." (Cal. Fair Employment and Housing Com., Enrolled Bill Rep. on Sen. Bill No. 1234, *supra*, pp. 2-3; see *ante*, at p. 750.) At the very least, it seems clear that the Legislature made attempts to ensure the availability of emotional distress damage awards in administrative proceedings. (See § 12955.6 [FEHA shall not be "construed to afford to the classes protected under this part, fewer rights or remedies" than the federal statutory scheme; see also 42 U.S.C. § 3612(b), (g)(3) [emotional distress damages available in federal administrative proceedings].)

We disagree with Konig's amicus curiae's argument that the Legislature made it evident "that recovery for emotional distress and other intangible injuries may only be sought in a court of law." As part of the 1993 amendments, the Legislature enacted section 12980, subdivision (d), and section 12981, subdivision (g). (See *ante*, at p. 751.) These sections provide that the DFEH must notify complainants that they "may only be able to recover damages for emotional distress or other intangible injuries through a civil action filed under Section 12989." (§§ 12980, subd. (d), 12981, subd. (g).) The tentative nature of "may," along with the focus on the complainant's *ability* to seek emotional distress damages (*ibid.*), simply reflects the uncertainty of recovering these damages in light of *Walnut Creek Manor, supra*, 54 Cal.3d at page 268. Contrary to the dissent's assertion (dis. opn., *post*, at p. 761), this required notice does not indicate that the Legislature intended to make emotional distress damage awards available only in judicial proceedings.

CONCLUSION

In our constitutional analysis, we guard against "adopt[ing] formalistic and unbending rules." (*CFTC, supra*, 478 U.S. at p. 851 [106 S.Ct. at

p. 3257].) Thus, in this context, it is even more important that we not doggedly follow precedent, especially when we may reasonably distinguish it. In sum, we conclude that the judicial option provision of section 12989, as well as subsequent legislation and administrative experience, have remedied constitutional difficulties identified in *Walnut Creek Manor, supra,* 54 Cal.3d at page 267.

### DISPOSITION

We reverse the Court of Appeal's judgment, and remand the matter for proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring.—In this case brought under the state Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), the majority upholds the authority of the Fair Employment and Housing Commission (Commission) to award compensatory damages for emotional distress to housing discrimination victims.[1] In doing so, the majority declines to follow an 11-year-old decision of this court, *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 267 [284 Cal.Rptr. 718, 814 P.2d 704] *(Walnut Creek Manor),* which, over my dissent, held that the Commission's award of compensatory damages violated our state Constitution's judicial powers clause (Cal. Const., art. VI, § 1). That constitutional provision allows adjudications by administrative bodies only when reasonably necessary to further the purposes of the law being enforced.

Unlike the majority in *Walnut Creek Manor,* I would in that case have upheld the Commission's award of compensatory damages to Robert Cannon, a 55-year-old African-American man, who for two and a half years unsuccessfully sought to rent an apartment in a large complex and, while on a waiting list, was passed over 35 times. In each instance, the unit was rented to a non-African-American who had applied later than Cannon. *(Walnut Creek Manor, supra,* 54 Cal.3d at pp. 273-287 (dis. opn. of Kennard, J.).) I pointed out that the Commission's authority to compensate for emotional distress is crucial to the effective enforcement of FEHA, in part because in most cases of housing discrimination the victim's out-of-pocket damages are de minimis, thus leaving emotional distress as the only compensable injury. *(Walnut Creek Manor, supra,* at pp. 280-281 (dis. opn. of Kennard, J.).) As I explained, "[u]nless the administrative forum can continue to offer meaningful redress, many persons who have clearly suffered invidious discrimination may simply forgo their claims." *(Ibid.)* Contrary to the majority's holding in

---

[1]Further statutory references are to the Government Code.

*Walnut Creek Manor*, I concluded that the Commission's award of emotional distress damages did not violate the judicial powers clause of the California Constitution. (*Walnut Creek Manor, supra*, at p. 282 (dis. opn. of Kennard, J.).)

In response to the majority's decision in *Walnut Creek Manor*, the Legislature substantially amended FEHA. (Stats. 1992, ch. 182, § 19, pp. 924-925; Stats. 1993, ch. 1277, §§ 9, 10, pp. 7518-7522.) It added, among other things, a provision allowing either party to a claim of housing discrimination brought before the Commission to opt out of the administrative proceeding and "to have the claim[] asserted in the charge adjudicated in a civil action" in court. (§ 12989, subd. (a).) Here, the majority relies on that provision and on this court's arbitration decisions (see *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*); *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*)) in now holding that the Commission's authority to award emotional distress damages does not violate the state Constitution's judicial powers clause.[2] A contrary conclusion, the majority observes, "would create an unjustified distinction between the authority of arbitrators and that of administrative adjudicators." (Maj. opn., *ante*, at p. 754.) I agree. I thus concur in the judgment reinstating the Commission's $10,000 emotional distress award to African-American police officer Sheryl McCoy for being denied housing because of her race.

BROWN, J., Dissenting.—The notion that the acquiescence of parties to an administrative proceeding sanctions constitutionally suspect jurisdiction ignores the reason structural restraints, like the judicial powers clause, were built into constitutions in the first instance. The idea was to create a complex system of checks and balances that would operate to "counteract the effects of faction despite the inevitability of the factional spirit" (Sunstein, *Interest Groups in American Public Law* (1985) 38 Stan. L.Rev. 29, 44) and "prevent both majorities and minorities from usurping government power to distribute wealth or opportunities in their favor." (*Ibid.*) These days, however, the Madisonian world has gone "topsy turvy" as factions, defined as groups " 'activated by some common interest . . . ,' have become sectors of policy." (Golembiewski & Wildavsky, The Cost of Federalism, Bare Bones: Putting Flesh on the Skeleton of American Federalism (1984) p. 73.) "Indeed," as Aaron Wildavsky notes, "government now pays citizens to organize, lawyers to sue, and politicians to run for office. Soon enough, if current

---

[2]With respect to the two arbitration cases cited, there too I disagreed with the holdings of the majority, which sanctioned virtually unfettered discretion by arbitrators in the decision-making process (*Moncharsh, supra*, 3 Cal.4th at pp. 33-40 (conc. & dis. opn. of Kennard, J.)) and in awarding damages (*Advanced Micro Devices, supra*, 9 Cal.4th at pp. 391-406 (dis. opn. of Kennard, J.)).

trends continue, government will become self-contained, generating (apparently spontaneously) the forces to which it responds." (*Ibid.*) When the courts aid and abet such insularity, the implications give rise to all the more concern.

The most disturbing aspect of this case is not that the court should cede constitutional ground with such alacrity; its willingness to do so is by now well established. (See *Obrien v. Jones* (2000) 23 Cal.4th 40 [96 Cal.Rptr.2d 205, 999 P.2d 95]; *In re Rose* (2000) 22 Cal.4th 430 [93 Cal.Rptr.2d 298, 993 P.2d 956]; *Leone v. Medical Board* (2000) 22 Cal.4th 660 [94 Cal.Rptr.2d 61, 995 P.2d 191].) Rather, it is the encouragement given this agency—and any others that are quick studies—to do what the agency deems best for its constituency or its consequence, even if that results in arrogating core judicial functions the Legislature itself has implicitly recognized are beyond reach. I respectfully dissent.

I

In *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 267 [284 Cal.Rptr. 718, 814 P.2d 704] (*Walnut Creek Manor*), this court determined an award by the Fair Employment and Housing Commission (Commission) of compensatory damages—for nonquantifiable emotional distress—violated the judicial powers clause of the California Constitution. (Cal. Const., art. VI, § 1; cf. *id.*, art. XIV, § 1 [authorizing the Legislature to confer judicial powers on a commission for the general welfare of employees].) In looking-glass fashion, the majority purports to find that the 1992 and 1993 amendments to the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)[1] have overcome and displaced the constitutional objections identified in our opinion and that the Legislature so intended. This interpretation finds no substance in either the statutory history or the text.

As the majority itself explains, the impetus for the changes was not to abrogate *Walnut Creek Manor* but to make the FEHA substantially equivalent to federal law to ensure certification by the United States Department of Housing and Urban Development (HUD). (Maj. opn., *ante*, at pp. 749-750.) Indeed, the legislation designed to accomplish this goal was initiated prior to the court's decision. (See Dept. of Fair Employment and Housing, Request for Approval of Proposed Legislation (Feb. 21, 1991) p. 1 [requesting amendment of the FEHA "to bring the housing discrimination provisions of California law into conformity with the equivalent federal statute"].) Subsequently, the Legislature acknowledged *Walnut Creek Manor* (see Cal. Fair

---

[1]All undesignated statutory references are to the Government Code.

Employment and Housing Com., Enrolled Bill Rep. on Sen. Bill No. 1234 (1991-1992 Reg. Sess.) July 2, 1992, p. 2) but took no direct steps to address it. (Cf. Gov. Code, § 12970, subd. (a)(3); Stats. 1992, ch. 911, § 6, p. 4245 [expressly authorizing award of compensatory damages for acts of employment discrimination under FEHA after *Walnut Creek Manor*].)

To the extent the 1992 and 1993 amendments contained any reference to the court's invalidation of Commission authority to award compensatory damages, they suggest legislative acquiescence: Section 12980, subdivision (d), requires that once a person files a housing discrimination complaint with the Department of Fair Employment and Housing (DFEH), the DFEH must advise the complainant of time limits, the parties' rights, and the choice of forums and provide "a written explanation that informs the complainant that, if an accusation is issued, the *complainant may only be able to recover damages for emotional distress or other intangible injuries through a civil action filed under Section 12989.*" (Italics added; Stats. 1993, ch. 1277, § 9, p. 7519.) Likewise, section 12981, subdivision (g), provides that should the DFEH include in an accusation or amended accusation "a prayer for damages for emotional distress or other intangible injuries as a component of actual damages, the department shall advise the complainant, in writing, that *he or she may only be able to recover damages for emotional distress or other intangible injuries through a civil action filed under Section 12989.*" (Italics added; Stats. 1993, ch. 1277, § 10, p. 7522; see also Cal. Code Regs., tit. 2, § 7408, subd. (h)(10) [accusation must contain statement that complainant may recover damages for emotional distress or other intangible injury through a civil action].)

It is equally clear, as the majority further acknowledges (maj. opn., *ante*, at p. 751), that these changes were sufficient for HUD to consider the FEHA substantially equivalent to the Fair Housing Act (42 U.S.C. § 3601 et seq.): HUD officials found any inconsistency between state and federal law with respect to the Commission's inability to award compensatory damages "not problematic." (HUD Asst. Gen. Counsel Harry L. Carey, mem. to Asst. Sect. Gordon H. Mansfield, U.S. Off. of Fair Housing and Equal Opportunity, Aug. 27, 1992, p. 5.) "[T]his shortcoming does not appear significant in light of the provisions empowering the agency to represent aggrieved persons, at agency expense, in a civil action which affords an opportunity for recovery of the full range of damages obtainable pursuant to the [Fair Housing] Act. [Sections] 12989 and 12989.2 afford aggrieved persons such an opportunity." (HUD Asst. Gen. Counsel Harry L. Carey, mem. to Director Jacquelyn J. Shelton, Off. of Fair Housing Enforcement, Oct. 28, 1991, p. 4.)

Accordingly, even though the Commission recommenced awarding compensatory damages following passage of the 1992 and 1993 amendments, it

did not do so pursuant to any legislative intent to resurrect that authority in the wake of *Walnut Creek Manor*. It did so strictly on its own unsanctioned initiative.

## II

Even if the majority has correctly interpreted the Legislature's intent in amending the FEHA, the result here remains incompatible with the reasoning of *Walnut Creek Manor* and the limitations imposed by the judicial powers clause. In *McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348 [261 Cal.Rptr. 318, 777 P.2d 91] (*McHugh*), the court delineated a two-part analysis for assessing the validity of an administrative agency's award of damages: "An administrative agency may constitutionally hold hearings, determine facts, apply the law to those facts, and order relief—including certain types of monetary relief—so long as (i) such activities are authorized by statute or legislation and are *reasonably necessary* to effectuate the administrative agency's *primary, legitimate regulatory purposes*, and (ii) *the 'essential' judicial power* (i.e., the power to make enforceable, binding judgments) *remains ultimately in the courts, through review of agency determinations*." (*Id.* at p. 372, italics in original.)

Applying this analysis, the court in *Walnut Creek Manor* found the award of compensatory damages for housing discrimination ran afoul of the substantive prong. "[T]he primary regulatory purpose of the [FEHA] is to *prevent* discrimination in housing before it happens and, when it does occur, to offer a streamlined and economical administrative procedure to make its victim whole *in the context of the housing* [citation]. The award of unlimited general compensatory damages is neither necessary to this purpose nor merely incidental thereto; its effect, rather, is to shift the remedial focus of the administrative hearing from affirmative actions designed to redress the particular instance of unlawful housing discrimination and prevent its recurrence, to compensating the injured party not just for the tangible detriment to his or her housing situation, but for the intangible and nonquantifiable injury to his or her psyche suffered as a result of the respondent's unlawful acts, in the manner of a traditional private tort action in a court of law. [Citations.]" (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 264, italics in original.)

In reaching this conclusion, the court did not question the Commission's contention that compensatory damages "serve to deter discrimination and compensate its victim . . . . Under *McHugh* . . . , the issue, rather, is whether the award of substantial emotional distress compensatory damages

is 'reasonably necessary' to accomplish the commission's legitimate regulatory purposes and 'merely incidental' to its primary regulatory purposes, or in reality transfers to the agency the judicial function of determining traditional common law claims. [Citation.]" (*Walnut Creek Manor, supra,* 54 Cal.3d at pp. 258-259.) The court found the award of unlimited nonquantifiable damages plainly constitutes the latter, emphasizing that " '[t]he power to award compensatory and punitive tort damages to an injured party is a judicial function.' [Citations.]" (*Id.* at p. 262; see *McHugh, supra,* 49 Cal.3d at pp. 366-367; *Curtis v. Loether* (1974) 415 U.S. 189, 196 [94 S.Ct. 1005, 1009, 39 L.Ed.2d 260].) In relation to the judicial powers clause, the problem the court identified was thus structural, which no amount of judicial review could salvage. (*Walnut Creek Manor,* at p. 265; see *McHugh,* at p. 364; cf. *Commodity Futures Trading Comm'n v. Schor* (1986) 478 U.S. 833, 851 [106 S.Ct. 3245, 3256-3257, 92 L.Ed.2d 675] (*CFTC*).)

Neither can legislative enactment. Regardless of statutory changes that now permit either complainant or respondent to opt out of administrative proceedings (§ 12989, subd. (a)), the immutable fact remains that authorizing the Commission to award compensatory damages invests it with a fundamental judicial prerogative. While this constitutional obstacle lies at the heart of the decision in *Walnut Creek Manor,* the court identified several others as well, none of which have been overcome by the 1992 and 1993 amendments. Thus, the fact remains that while restitutive damages "are quantifiable amounts of money due an injured private party," "[g]eneral compensatory damages for emotional distress, by contrast, are not pecuniarily measurable, defy a fixed rule of quantification, and are awarded without proof of pecuniary loss. [Citations.]" (*Walnut Creek Manor, supra,* 54 Cal.3d at p. 263.) "As the commission itself has recognized, in seeking to place a dollar value on a complainant's mental and emotional injuries there is little in legal authority to guide it, for the reason that '[i]t has traditionally been left to the trier of fact to assess the degree of harm suffered and to fix a monetary amount as just compensation therefor. [Citation.]' [Citations.]" (*Ibid.*) Based on representations at oral argument, the Commission apparently now finds such "legal authority" in its own past decisions. Nevertheless, this tautology does not transmute the essential nonquantifiable character of compensatory damages. Nor has the Commission explicated the nature of its superior agency expertise in an area "traditionally" left to a trier of fact. (*Ibid.*; cf. *CFTC, supra,* 478 U.S. at pp. 844-845 [106 S.Ct. at pp. 3253-3254].)

The Commission also fails to explain why it is no longer the case that "[t]he availability of unlimited damages . . . risks converting the focus of

the commission's remedial decision from one of fashioning equitable remedies directed to making the injured party whole in the context of housing, to one of compensating him or her for the psychic harm suffered." (*Walnut Creek Manor*, *supra*, 54 Cal.3d at p. 261.) Why is there no longer a concern that "[a]s the commission seeks to assess and evaluate the extent of the complainant's injury, what once was an alternative or incidental adjunct to the primary relief of securing the same or comparable housing, has assumed an independent importance that potentially threatens to dominate the administrative hearing"? (*Id.* at pp. 261-262.)

In response, the majority and the Commission rely substantially, if not exclusively, on *CFTC*, *supra*, 478 U.S. 833, in which the United States Supreme Court upheld the authority of the Commodity Futures Trading Commission to adjudicate a state law counterclaim in a reparation proceeding based on the parties' consent to the agency's assumption of jurisdiction. (See maj. opn., *ante*, at pp. 751-755.) Because the FEHA did not previously contain a bilateral opt-out provision and the question of consent and its impact on the judicial powers analysis was not at issue in *Walnut Creek Manor*, the court is supposedly at liberty to reconsider its prior conclusions.

As the Court of Appeal below correctly understood, however, the *CFTC* rationale does not—and cannot—obtain when the judicial powers concern is one of substance rather than procedure. The Supreme Court expressly recognized this distinction: "Article III, § 1, safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, [citation], and thereby preventing 'the encroachment or aggrandizement of one branch at the expense of the other.' [Citations.] To the extent that this structural principle is implicated in a given case, the parties cannot by consent cure the constitutional difficulty for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, § 2. [Citation.] When these Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." (*CFTC*, *supra*, 478 U.S. at pp. 850-851 [106 S.Ct. at pp. 3256-3257].)

What the high court characterized as a "structural" limitation in *CFTC*, this court identified as a "substantive" one in *Walnut Creek Manor*. (See *Walnut Creek Manor*, *supra*, 54 Cal.3d at pp. 256, 265-266; *McHugh*, *supra*, 49 Cal.3d at p. 372.) Whatever the label, the principle remains the same: the parties cannot confer upon an administrative agency authority that contravenes constitutional constraints. (Cf. *Walnut Creek Manor*, at pp. 257, 265;

*McHugh*, at p. 364.) Regardless of consent, the award of compensatory damages remains a " 'judicial function' " (*Walnut Creek Manor*, at p. 262) that " 'has traditionally been left to the trier of fact.' " (*Id.* at p. 263.) Nor can consent shift the remedial focus of the administrative hearing back to "affirmative actions designed to redress the particular instance of unlawful housing discrimination and prevent its recurrence." (*Id.* at p. 264.) For the majority to hold otherwise misperceives not only the content of the judicial powers clause but, more importantly, its constitutional significance to the very structure of our governmental system.

## III

There is a qualitative difference between a bureaucratic process and a judicial decision and that difference remains, even when an administrative agency takes on all the attributes of a court. The preserving virtue of the judiciary is its independence. Not only are administrative agencies not immune to political influences, they are subject to capture by a specialized constituency. (See, e.g., Macey, *Separated Powers and Positive Political Theory: The Tug of War Over Administrative Agencies* (1992) 80 Geo. L.J. 671, 675 ["administrative agencies, like legislatures, are subject to substantial interest group influence"].) Indeed, an agency often comes into existence at the behest of a particular group—the result of a bargain between interest groups and lawmakers. (*Ibid.*)

Administrative processes are often touted as quicker and less costly. Here, counsel argued that the Commission's expertise makes it more efficient than the judicial system and that it could not successfully compete with the courts without authority to award compensatory damages. In this context, however, the streamlined and economical administrative procedure is efficient precisely because it is limited to making the victim whole in the context of housing and not trying to offer a broad array of judicial remedies. (*Walnut Creek Manor, supra*, 54 Cal.3d at pp. 261-262, 264.) In any event, these arguments are irrelevant to the constitutional question. Many constitutional mandates are inefficient, but neither efficiency nor convenience should have determinative weight when the structural integrity of the Constitution is at stake. A single branch of government that arrogated all power to itself would unquestionably be efficient. It would merely be unconstitutional.

Clearly, the administrative state is with us to stay. The question is all the more incumbent, therefore, how the courts will take the measure of administrative forays into territory assigned to the judicial branch. I would not

abandon well-founded precedent that preserves the appropriate balance. Accordingly, I respectfully dissent.