[No. S139073. Aug. 6, 2007.]

JEFFREY ELKINS, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
MARILYN ELKINS, Real Party in Interest.

1338

1340

1342

### Counsel

Garrett C. Dailey for Petitioner.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller and Shara Beral Witkin for Southern California Chapter of the American Academy of Matrimonial Lawyers, Northern California Chapter of the American Academy of Matrimonial Lawyers, Los Angeles County Bar Association, Los Angeles County Bar Association Family Law Section, Orange County Bar Association, Honorable Donald B. King, Honorable Sheila Prell Sonenshine, Honorable J.E.T. Rutter and Honorable Richard Denner as Amici Curiae on behalf of Petitioner.

Horvitz & Levy, David S. Ettinger; Eisenberg and Hancock and Jon B. Eisenberg for Respondent.

Fancher & Wickland, Paige Leslie Wickland; Harkins & Sargent and Daniel S. Harkins for Real Party in Interest.

Fox and Bank, Ronald S. Granberg, Dawn Gray, Linda Seinturier, Kathryn Fox, Brigeda D. Bank; and Stephen Temko for Association of Certified Family Law Specialists as Amicus Curiae upon the request of the Supreme Court.

Lee C. Pearce for the Family Law Section of the Contra Costa County Bar Association as Amicus Curiae upon the request of the Supreme Court.

### Opinion

GEORGE, C. J.—Petitioner Jeffrey Elkins represented himself during a trial conducted in marital dissolution proceedings instituted by his wife, Marilyn Elkins (real party in interest), in the Contra Costa Superior Court. A local superior court rule and a trial scheduling order in the family law court provided that in dissolution trials, parties must present their cases by means of written declarations. The testimony of witnesses under direct examination was not allowed except in "unusual circumstances," although upon request parties were permitted to cross-examine declarants. In addition, parties were required to establish in their pretrial declarations the admissibility of all exhibits they sought to introduce at trial.

Petitioner's pretrial declaration apparently failed to establish the evidentiary foundation for all but two of his exhibits. Accordingly, the court excluded the 34 remaining exhibits. Without the exhibits, and without the ability through oral testimony to present his case or establish a foundation for

his exhibits, petitioner rested his case. As the court observed, the trial proceeded "quasi by default," and the court's disposition of the parties' property claims demonstrated that the court divided the marital property substantially in the manner requested by petitioner's former spouse.

Petitioner challenges the local court rule and trial scheduling order on the grounds that they are inconsistent with the guarantee of due process of law, and that they conflict with various provisions of the Evidence Code and the Code of Civil Procedure. Respondent court counters that the promulgation of the rule and order comes within its power to govern the proceedings before it, and that its rule and order are consistent with constitutional and statutory provisions.

We need not reach petitioner's constitutional claim because, as applied to contested marital dissolution trials, the rule and order are inconsistent with various statutory provisions.[1] As we explain below, we reach this conclusion because, pursuant to state law, marital dissolution trials proceed under the same general rules of procedure that govern other civil trials. Written testimony in the form of a declaration constitutes hearsay and is subject to statutory provisions governing the introduction of such evidence. Our interpretation of the hearsay rule is consistent with various statutes affording litigants a "day in court," including the opportunity to present all relevant, competent evidence on material issues, ordinarily through the oral testimony of witnesses testifying in the presence of the trier of fact.

Although we are sympathetic to the need of trial courts to process the heavy caseload of dissolution matters in a timely manner, a fair and full adjudication on the merits is at least as important in family law trials as in other civil matters, in light of the importance of the issues presented such as the custody and well-being of children and the disposition of a family's entire net worth. Although respondent court evidently sought to improve the administration of justice by adopting and enforcing its rule and order, in doing so it improperly deviated from state law.

Subsequent to the trial (and our grant of review) in the present case, respondent incorporated much of its trial scheduling order into regularly adopted and published local rules of court. As of January 1, 2007, respondent's local rules were amended to provide that although declarations still are required from each witness in a dissolution trial, litigants have the option of calling witnesses for direct examination *in addition to* filing declarations.[2]

---

[1] Our conclusion does not affect hearings on motions.

[2] The local rule effective January 1, 2007, is similar to the trial scheduling order except that, in *addition* to the *required* declarations, it permits parties to present live testimony limited to the scope of the material in the declaration (Super. Ct. Contra Costa County, Local Rules, rule

This amendment does not render petitioner's case moot, because the prior rule and order were enforced against petitioner. In addition, the amended rules still require the admission into evidence of hearsay declarations, a practice inconsistent with the Evidence Code.

In addressing the issues raised by petitioner, we also exercise our inherent authority to ensure the orderly administration of justice and to settle important issues of statewide significance. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110 [51 Cal.Rptr.3d 98, 146 P.3d 547]; *In re Roberts* (2005) 36 Cal.4th 575, 593 [31 Cal.Rptr.3d 458, 115 P.3d 1121]; *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745–746, fn. 3 [123 Cal.Rptr.2d 1, 50 P.3d 718]; *Burch v. George* (1994) 7 Cal.4th 246, 253, fn. 4 [27 Cal.Rptr.2d 165, 866 P.2d 92].) In addition to providing guidance to the trial courts, our discussion highlights the unusual burdens and restrictions that have been imposed upon family law litigants at the local level in response to increasing caseloads and limited judicial resources. We observe that this problem may merit consideration as a statewide policy matter, and suggest to the Judicial Council that it establish a task force for that purpose.

I

Marilyn and Jeffrey Elkins were married on April 20, 1980. They had one child, who was born in 1991. After Marilyn subsequently instituted marital dissolution proceedings, the issue of date of separation was bifurcated and tried first. Property issues were to be tried on September 19, 2005.

The matter proceeded subject to a local rule of court providing that at trials in dissolution matters, "[d]irect examination on factual matters shall not be permitted except in unusual circumstances or for proper rebuttal. The Court may decide contested issues on the basis of the pleadings submitted by the parties without live testimony." (Super. Ct. Contra Costa County, Local Rules, former rule 12.5(b)(3), eff. July 1, 2005.) In addition, the rule provided that "[s]ubject to legal objection, amendment, and cross-examination, all declarations shall be considered received in evidence at the hearing." (*Ibid.*) Under the rule, a party's failure to file responsive pleadings, including declarations, in the time prescribed by the rules authorized the court to "permit the matter to proceed as a default," or order a continuance and impose a monetary sanction on the "untimely party." (*Id.*, former rule 12.5(b)(4).)

---

12.8 F.1.a), italics added). The rule also provides that "[a]ny required evidentiary foundation (including stipulations) for admission of the proposed exhibits shall be completely set forth in the declaration(s), as *all rulings will be based on the declarations alone.*" (*Id.*, rule 12.8 F.5., italics added.)

A trial scheduling order (TSO or order) imposed additional restrictions and sanctions. Like the rule, it ordered that all direct testimony at trial be presented prior to trial in the form of declarations "filed in lieu of oral direct testimony, subject to cross-examination." Indeed, even if a party's witness refused to sign a declaration, the party was required to file an unsigned declaration.

Under the TSO, the parties were ordered to file initial declarations executed by themselves and by their witnesses 10 court days prior to trial, along with trial briefs. The order provided that the declarations were to "explain" the appended complete set of trial exhibits, and that "[a]ny required evidentiary foundation for admission of the proposed exhibits shall be completely set forth in the declaration(s)."

Sanctions for failure to comply with the TSO were severe. "Failure to provide initial declarations may result in there being no direct testimony on that issue and issue sanctions may result. Failure to file a trial brief indicates to the court that no cases are being relied on by that side. Failure to provide a declaration because a witness refused to sign it *shall not excuse the filing of [any] unsigned declarations.*" (Italics added.)

The TSO directed the parties to file responsive declarations and exhibits five court days prior to trial, along with any objections to exhibits, as well as responsive briefs and any demands for the production of declarants for the purpose of cross-examination. The TSO concluded with the following warning: "Failure to comply with these requirements will constitute good cause to exclude evidence or testimony at trial and/or to make adverse inferences or findings of fact against the non-complying party."

Marilyn, who was represented by counsel, filed her declaration, exhibits, and trial brief on September 2, 2005, and her responsive declaration on September 8, 2005. Jeffrey, who was not represented by counsel, filed his trial brief and declaration on September 2, 2005. He failed to attach his exhibits, however, and his binder of 36 exhibits was not delivered to the court and to opposing counsel until one court day prior to the date set for trial.

According to Marilyn's declaration, the issues to be determined at trial included (1) valuation and disposition of the family home; (2) Jeffrey's right to reimbursement for postseparation improvements to the home; (3) the characterization and division of a multimillion-dollar litigation settlement awarded to Jeffrey's business; (4) the amount of Jeffrey's income from specified sources; (5) the characterization and division of assets withdrawn by Jeffrey from community accounts; (6) division of a retirement account held in Marilyn's name; (7) the status of certain property declared to be the separate

property of Marilyn; (8) division of the contents of a joint safe deposit box; and (9) Marilyn's attorney fees. The issue of child support was reserved, and the parties waived spousal support.

The matter came on for trial. Counsel for Marilyn objected to all but two of Jeffrey's exhibits because, contrary to the TSO, Jeffrey's declaration failed to refer to the exhibits or offer a basis for their admission into evidence. The court had not received its copy of Jeffrey's declaration or exhibits when trial began, forcing it to review Jeffrey's copy on the bench. Marilyn's counsel announced he would not cross-examine Jeffrey if the court sustained counsel's objection to Jeffrey's exhibits, and asserted that Jeffrey therefore was "not entitled to offer any further evidence."

When Jeffrey explained that the procedure he had followed was the same he had engaged in at the trial of the bifurcated issue of the date of separation, the court admonished Jeffrey that he had misunderstood the objection raised by Marilyn's counsel. The court explained: "In order to get a document admitted into evidence under the trial scheduling order . . . it says that the evidentiary basis and foundation for each exhibit must be set forth in the declaration so the other side can object to see, you know, if exhibits have an evidentiary basis or not. And [Marilyn's counsel is] saying that those exhibits don't have any foundation in your declaration. [¶] So if you can point me to the foundations *in your declarations*, then we—we'll dispose of that argument quickly[.] If not those—those exhibits that don't have an evidentiary foundation *will be stricken*." (Italics added.)

The court provided a "typical example of what I'm talking about with foundation," noting that Jeffrey's proposed exhibit No. 5 was not referred to in Jeffrey's declaration, "[s]o there's no way of knowing what this document is *without any testimony—direct testimony saying what this is or what it purports to [be]*." (Italics added.) Jeffrey attempted to explain that his exhibit No. 5 "refers to an accounting given to my wife—given by my wife to me, and this document is in relation to that."

The court responded: "I understand that. I've already reviewed your declaration. Tentatively, I am going to rule in favor of [Marilyn]. I'm going to allow you at one of the breaks that we have so as not to disrupt the flow right now to rethink your argument and give me the specific evidentiary foundations for these documents, but *I don't see it in your declaration*. Particularly, the one we were specifically taking about, Exhibit 5, *I don't see any specific reference to it in your declaration*. There's a general reference to a general category." (Italics added.) Jeffrey responded: "Your Honor, there are no specific references in any document." The court, after asking Jeffrey not to interrupt, continued: "There's a general reference, and under that general

category, arguably, every document that's ever been filed in this case would be generally referred to, but *what's required under the trial scheduling order* are the specific evidentiary foundations so that I can rule on them. [¶] There being no evidentiary support for [Jeffrey's exhibits] with the exception of Exhibit 3 and 12 [to which counsel for Marilyn had not objected because the foundation for the evidence appeared in Jeffrey's declaration], the objections will be sustained tentatively subject to further argument after the morning break." (Italics added.) No such break ensued.

Marilyn's declaration and exhibits were admitted into evidence, and she rested her case. Counsel for Marilyn objected to any consideration of the proposed order filed by Jeffrey because the filing of that document was untimely under the TSO.

The court stated its understanding, based upon Jeffrey's declaration, that Jeffrey did not wish to cross-examine Marilyn and that he consented to a dissolution of the marriage. Jeffrey stated he was resting his case. The court confirmed that Jeffrey had withdrawn his request to cross-examine Marilyn, and Jeffrey added that he also wished to withdraw his request to cross-examine expert witness Eggers. The court stated: "Well, before you rest, I'm assuming you would like to admit into evidence your declaration," but Jeffrey stated he did not wish to do so. Accordingly, Jeffrey's declaration was not admitted into evidence. Without providing the anticipated "morning break," the court invited closing argument. Although observing that the trial was proceeding "quasi by default, so to speak," the court stated that both parties still should address the subjects of "the furniture lists" and the contents of the safe deposit box. Counsel for Marilyn responded that those issues had been settled by stipulation prior to trial.

Jeffrey confirmed the stipulations and further offered to relinquish his interest in the family home and in his automobile. The court responded that Jeffrey's offer was too drastic and that the court would permit him to reconsider, stating that the court would "render a decision along the lines of [Marilyn's counsel's] proposed order after trial, despite your request here, because that was not what was before me to be tried today. And so the tenor of what you've just said is in contrast to the declaration that you submitted to me that I prepped on, your trial brief . . . ."

Jeffrey responded that he was not referring to the proposed order he had submitted prior to trial. He declared: "My concern is that *I came into the trial with the intent of presenting my position, and I'm being cut out of that completely with only reliance on two exhibits which are—no way can defend my position.* So I might as well give up my position and leave it to the best well-being of my family." (Italics added.)

The court responded that Jeffrey would be well advised to secure legal counsel, and that the exclusion of Jeffrey's exhibits would not lead to an order depriving him of his interest in the family home, referring again to the proposed order submitted prior to trial by Marilyn's counsel. Jeffrey responded: "Your Honor, if you take a spreadsheet and you add up and deduct everything that [counsel for Marilyn] is asking for, I am left with nothing. Zero dollars. Zero house. Zero car. Nothing. So what's the difference?"

The court took the matter under submission. Marital status was terminated, and additional issues were reserved for future trial. The court asked the parties to decide by the end of the week whether to submit a settlement agreement (presumably reflecting Jeffrey's last-minute waiver of any interest in the community property) or instead to ask the court to rule upon the proposed orders that were submitted to the court prior to trial. Apparently the parties selected the latter option; on October 3, 2005, the court filed a final disposition of the property issues still reflecting Jeffrey's half-interest in the family home. The order noted the parties' stipulation concerning child custody and visitation and the court's reservation of jurisdiction over the matter of child support. By further stipulation, the parties waived spousal support, and the court's jurisdiction over that issue was terminated. The community interest in Marilyn's retirement account was divided, and the court resolved the additional property issues identified in Marilyn's declaration in a manner substantially reflecting the order proposed by Marilyn.

Jeffrey filed a petition for writ of mandate or prohibition in the Court of Appeal. He asserted that there was no statutory authority for the local rule and order preventing the parties from presenting the direct examination of witnesses and requiring the evidentiary foundation for proposed exhibits to be established in a declaration filed well in advance of trial. He further argued that the local rule and order established a system of "trial by declaration" that violated due process principles and placed an "unreasonable burden" on litigants. Jeffrey's petition also contended that the sanctions established by the rule and order were inconsistent with the policy favoring trial on the merits, and that their enforcement by the trial court constituted an abuse of discretion requiring reversal of the judgment that resolved the parties' community property dispute.

The Court of Appeal summarily denied the petition. We subsequently granted petitioner's petition for review and ordered the Contra Costa County Superior Court to show cause why the challenged local rule and trial scheduling order should not be deemed invalid for the reasons stated in the

petition for writ of mandate or prohibition.[3] Prior to hearing oral argument, this court requested and received briefing on the question whether the local rules and order conflicted with the hearsay rule. (Evid. Code, § 1200.)

## II

### A

■ As respondent court asserts, trial courts possess inherent rulemaking authority as well as rulemaking authority granted by statute. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203] (*Rutherford*); Code Civ. Proc., §§ 128, 177, 575.1; Gov. Code, § 68070.) "It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] . . . '. . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice. [Citation.]' " (*Rutherford, supra,* 16 Cal.4th at p. 967.)

The scope of a court's inherent rulemaking authority has been discussed in various decisions (see, e.g., *Rutherford, supra,* 16 Cal.4th at pp. 967–968), and the outer limits of such authority are clear.[4] A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the California Constitution or case law. (*Rutherford, supra,* at pp. 967–968; see also *Hall v. Superior Court* (2005) 133 Cal.App.4th 908, 916–918 [35 Cal.Rptr.3d 206].) As provided in Government Code section 68070, subdivision (a): "Every court may make rules for its own government and the government of its officers *not inconsistent with law or with the rules adopted and prescribed by the Judicial Council.*" (Italics added; see also 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 204, p. 272; *id.* (2006 supp.) § 204,

---

[3] Thereafter, we invited and received amicus curiae briefs from the Family Law Section of the Contra Costa County Bar Association, the California Association of Certified Family Law Specialists, and the Northern and Southern California Chapters of the American Academy of Matrimonial Lawyers, who were joined in their brief in support of petitioner by the Los Angeles County Bar Association, the Los Angeles County Bar Association Family Law Section, the Orange County Bar Association, the Honorable Donald B. King, Justice of the First District Court of Appeal (Retired), the Honorable Sheila Prell Sonenshine, Justice of the Fourth District Court of Appeal (Retired), the Honorable J.E.T. Rutter, Judge of the Orange County Superior Court (Retired), and the Honorable Richard Denner, Judge of the Los Angeles County Superior Court (Retired).

[4] In speaking of the limits of a trial court's authority, we note that constitutional issues concerning separation of powers between the judicial branch and the legislative branch are not involved in the present case. (See, e.g., *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45 [51 Cal.Rptr.2d 837, 913 P.2d 1046].)

pp. 87–88.) In sum, local courts may not create their own rules of evidence and procedure in conflict with statewide statutes.

Reviewing courts have not hesitated to strike down local court rules or policies on the ground they are inconsistent with statute, with California Rules of Court promulgated by the Judicial Council, or with case law or constitutional law. Appellate decisions have invalidated local rules or restricted their application in many areas of affected litigation, including dissolution actions,[5] litigation under the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.) (fast track litigation),[6] complex litigation (Cal. Rules of Court, rule 3.400 et seq.),[7] and general civil litigation.[8] We also have disapproved rules and procedures adopted by the Courts of Appeal (see *People v. Pena* (2004) 32 Cal.4th 389, 400 [9 Cal.Rptr.3d 107, 83 P.3d 506]), as well as rules adopted by the Judicial Council. (See *People v. Hall* (1994) 8 Cal.4th 950, 963 [35 Cal.Rptr.2d 432, 883 P.2d 974].)

---

[5] In *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 656 [59 Cal.Rptr.2d 254], for example, the reviewing court invalidated a trial court rule imposing its own family law mediation fee in addition to fees specifically established by statute. In *McLaughlin v. Superior Court* (1983) 140 Cal.App.3d 473, 481 [189 Cal.Rptr. 479], the reviewing court held that a local rule denied due process of law in purporting to permit a custody mediator to make a written recommendation to the court without providing a factual basis and without facing cross-examination.

[6] See *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 655 [40 Cal.Rptr.3d 501] (local courts cannot shorten the statutory notice period or alter standards for production of evidence for summary judgment hearings); *Hock v. Superior Court* (1990) 221 Cal.App.3d 670, 673–674 [270 Cal.Rptr. 579] (invalidating local fast track rule under which counsel could not be substituted subsequent to trial setting conference without court's approval).

[7] See *First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 336 [94 Cal.Rptr.2d 104] (invalidating trial court's case management order that prohibited filing motions for summary judgment absent compliance with various nonstatutory conditions).

[8] See *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086 [94 Cal.Rptr.2d 575] (local rule authorizing granting motion for summary judgment based solely on the absence of opposition was inconsistent with applicable statute); *Pacific Trends Lamp & Lighting Products, Inc. v. J. White, Inc.* (1998) 65 Cal.App.4th 1131, 1135–1136 [76 Cal.Rptr.2d 918] (local rule improperly required parties to "meet and confer" prior to filing motion for new trial; sanctions for violation of local rule were inconsistent with statutory procedure); *Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1255–1256 [75 Cal.Rptr.2d 681] (local rule improperly permitted grant of summary judgment on grounds inconsistent with statute); *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1158 [57 Cal.Rptr.2d 200] (*Kalivas*) (local rule governing summary judgment requiring that parties file joint statement of disputed and undisputed facts was invalid because it was inconsistent with statute); *Wells Fargo Bank v. Superior Court* (1988) 206 Cal.App.3d 918, 922–923 [254 Cal.Rptr. 68] (invalidating local rule requiring "extensive" or "complicated" motions for summary judgment to be specially set under notice period shorter than that established by statute); *St. Vincent Medical Center v. Superior Court* (1984) 160 Cal.App.3d 1030, 1033–1034 [206 Cal.Rptr. 840] (invalidating trial-setting-conference order shortening time for exchange of expert witness lists to less than what was provided by statute).

A common theme in the appellate decisions invalidating local rules, and one that also appears in the present case, is that a local court has advanced the goals of efficiency and conservation of judicial resources by adopting procedures that deviated from those established by statute, thereby impairing the countervailing interests of litigants as well as the interest of the public in being afforded access to justice, resolution of a controversy on the merits, and a fair proceeding.

In *Lammers v. Superior Court* (2000) 83 Cal.App.4th 1309 [100 Cal.Rptr.2d 455], for example, a local court rule governing family law proceedings required the parties to file a timely request that the court review the case file prior to a hearing on a contested matter. In order to avoid obvious constitutional issues, the reviewing court refused to endorse the trial court's view that the local rule relieved the court of the obligation to read the case file *at all* when the request to do so was untimely. The Court of Appeal explained that "a measure implemented for the sake of efficiency cannot jeopardize the constitutional integrity of the judicial process [citation]. In other words, court congestion and 'the press of business' will not justify depriving parties of fundamental rights and a full and fair opportunity to present all competent and material evidence relevant to the matter to be adjudicated." (*Id.* at p. 1319.)[9]

This court made similar observations in *Garcia v. McCutchen* (1997) 16 Cal.4th 469 [66 Cal.Rptr.2d 319, 940 P.2d 906] (*Garcia*), involving fast track litigation. (Gov. Code, § 68600 et seq.) We concluded a trial court was without authority to dismiss an action for failure to comply with local fast track rules, because such a dismissal contravened a statute establishing that sanctions for failure to comply with these rules should fall on counsel, and not on the party, if counsel was responsible for the failure to comply. (*Garcia, supra,* 16 Cal.4th at p. 471.)

We rejected the trial court's argument that such power to dismiss was essential to serve the goal of reducing delay in litigation. We pointed out that the Trial Court Delay Reduction Act did not elevate delay reduction over the right of a litigant to present his or her case to the court, nor was delay

---

[9] See *Lokeijak v. City of Irvine* (1998) 65 Cal.App.4th 341, 342 [76 Cal.Rptr.2d 429] (disapproving a local court policy discouraging the filing of motions for summary judgment because, according to the local courts, the statutory procedure was "unduly time-consuming"); *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1532 [76 Cal.Rptr.2d 322] (trial court's policy of referring summary judgment motions to a referee did not comport with statute; " '[e]fficiency is not more important than preserving the constitutional integrity of the judicial process' "); see also *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 265 [77 Cal.Rptr.2d 781] (trial court erred in declining to hear oral argument on a motion for summary judgment; reviewing court urged trial courts not to "elevate judicial expediency over [a statutory] mandate").

reduction favored over deciding cases on the merits. " 'Cases filed in California's trial courts should be resolved as expeditiously as possible, *consistent with the obligation of the courts to give full and careful consideration to the issues presented, and consistent with the right of parties to adequately prepare and present their cases to the courts.*' [Citation.] Thus, in establishing delay reduction programs, the Legislature recognized *competing* public policy considerations and 'attempt[ed] to balance the need for expeditious processing of civil matters with the rights of individual litigants.' [Citation.]" (*Garcia, supra,* 16 Cal.4th at pp. 479–480.)

B

■ Although some informality and flexibility have been accepted in marital dissolution proceedings, such proceedings are governed by the same statutory rules of evidence and procedure that apply in other civil actions (with exceptions inapplicable to the present case). The Family Code establishes as the law of the state—and superior courts are without authority to adopt rules that deviate from this law—that except as otherwise provided by statute or rule adopted by the Judicial Council, "the rules of practice and procedure applicable to civil actions generally . . . apply to, and constitute the rules of practice and procedure in, proceedings under [the Family Code]." (Fam. Code, § 210; see *In re Marcus* (2006) 138 Cal.App.4th 1009, 1017 [41 Cal.Rptr.3d 861]; *In re Marriage of Mallory* (1997) 55 Cal.App.4th 1165, 1170 [64 Cal.Rptr.2d 667]; cf. *Fewel v. Fewel* (1943) 23 Cal.2d 431, 438–439 [144 P.2d 592] (conc. opn. of Traynor, J.) (*Fewel*); see also 11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband and Wife, § 99, pp. 152–154; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2007) ¶¶ 13:80, 13:81, pp. 13-22 to 13.23; Samuels & Mandabach, Practice Under the Cal. Family Code (Cont.Ed.Bar 2007) §§ 16.3–16.5, pp. 745–746.)

■ The rule and order that were applied in the present case called for the admission of declarations in lieu of direct testimony at trial. It is well established, however, that declarations constitute hearsay and are inadmissible at trial, subject to specific statutory exceptions, unless the parties stipulate to the admission of the declarations or fail to enter a hearsay objection. (Evid. Code, § 1200; *Lacrabere v. Wise* (1904) 141 Cal. 554, 556–557 [75 P. 185] (*Lacrabere*); see also *Estate of Fraysher* (1956) 47 Cal.2d 131, 135 [301 P.2d 848]; *Fewel, supra,* 23 Cal.2d at pp. 438–439 (conc. opn. of Traynor, J.); *Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1107 [27 Cal.Rptr.3d 741]; *Windigo Mills v. Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 597 [155 Cal.Rptr. 63]; *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 484–485 [114 Cal.Rptr. 356] (*Reifler*); *Estate of Horman* (1968) 265 Cal.App.2d 796, 805 [71 Cal.Rptr. 780].)

■ The law provides specific exceptions to the general rule excluding hearsay evidence (see, e.g., Evid. Code, § 1220 et seq.), including those governing the. admission of affidavits or declarations. For example, in the marital dissolution context, Family Code section 2336 requires various items of proof of fact to be submitted to the court in support of a *default* judgment and requires such proof to be in the form of an affidavit. (Fam. Code, § 2336, subd. (a).) But there is no general statutory exception to the hearsay rule for contested marital dissolution *trials*. On the contrary, the existence of a specific statutory exception for default judgments, where an adversary proceeding is waived or forfeited, only serves to support the general rule that hearsay declarations are inadmissible at contested marital dissolution trials.

■ Another statutory exception to the hearsay rule permits courts to rely upon affidavits in certain motion matters. (Code Civ. Proc., § 2009.)[10] Although affidavits or declarations are authorized in certain *motion* matters under Code of Civil Procedure section 2009, this statute does not authorize their admission at a contested *trial* leading to judgment. As this court explained in *Lacrabere, supra,* 141 Cal. 554, Code of Civil Procedure section 2009 "has no application to the proof of facts which are directly in controversy in an action. It was not intended to have the effect of changing the general rules of evidence by substituting voluntary *ex parte* affidavits for the testimony of witnesses. The section only applies to matters of procedure,— matters collateral, ancillary, or incidental to an action or proceeding,—and has no relation to proof of facts the existence of which are made issues in the case, and which it is *necessary to establish to sustain a cause of action.*" (*Lacrabere, supra,* at pp. 556–557, italics added; see also *Fewel, supra,* 23 Cal.2d at p. 438 (conc. opn. of Traynor, J.) ["The fact that section 2009 permits [the admission of affidavits] 'upon a motion' does not mean that the issues in a contested case may be determined and a judgment rendered on the basis of written statements of parties not before the court"]; Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶ 13:106, p. 13-30.)

The same point was emphasized in *Reifler, supra,* 39 Cal.App.3d 479. In that case the Court of Appeal considered a challenge to a Los Angeles Superior Court policy of adjudicating long-cause hearings on postjudgment *motions* in marital dissolution matters solely on the basis of affidavits. The reviewing court acknowledged that affidavits ordinarily are excluded as hearsay, but concluded Code of Civil Procedure section 2009 provides a hearsay exception that grants a trial court discretion to decide *motions* on the

---

[10] Code of Civil Procedure section 2009 provides: "An affidavit may be used to verify a pleading or a paper in a special proceeding, to prove the service of a summons, notice, or other paper in an action or special proceeding, to obtain a provisional remedy, the examination of a witness, or a stay of proceedings, and in uncontested proceedings to establish a record of birth, or *upon a motion,* and in any other case *expressly permitted by statute.*" (Italics added.)

basis of affidavits—even when facts are controverted—*but only so long as the controverted facts do not require factfinding resulting in a judgment. (Reifler, supra,* at pp. 484–485.) The court expressed no doubt that hearsay was inadmissible at a contested marital dissolution trial.

A recent decision by this court demonstrates the limited application of Code of Civil Procedure section 2009, and also illuminates the policy underlying application of the hearsay rule when questions of credibility arise, as they certainly do in dissolution trials. *(People v. Johnson* (2006) 38 Cal.4th 717 [42 Cal.Rptr.3d 887, 133 P.3d 1044] *(Johnson).)* In *Johnson,* we concluded that at a pretrial hearing on a motion to suppress evidence in a criminal case (Pen. Code, § 1538.5), the prosecution cannot carry its burden by submitting affidavits in lieu of live testimony. The pertinent statute, Penal Code section 1538.5, did not provide for such a procedure, and the historic practice long had been to require oral testimony. *(Johnson, supra,* 38 Cal.4th at pp. 726, 728.)

Moreover, as we explained in *Johnson,* "allowing a prosecutor to oppose a suppression motion with written affidavits in lieu of live testimony would be inconsistent with the trial court's vital function of assessing the credibility of witnesses." *(Johnson, supra,* 38 Cal.4th. at p. 729, fn. 8; see *id.* at p. 726.) A suppression motion "presents issues as to which the credibility of witnesses often is of critical significance" *(id.* at p. 731), and the witness's personal presence and oral testimony is significant because it " 'enable[s] the trier of fact to consider the demeanor of the witness in weighing his testimony and judging his credibility' " *(id.* at p. 733).

We also observed in *Johnson* that, unlike a pretrial suppression motion, the motions referred to in Code of Civil Procedure section 2009 are on "preliminary or ancillary procedural matters" that historically have been decided on the basis of affidavits alone, whereas it is well settled that section 2009 does not change the rules of evidence. *(Johnson, supra,* 38 Cal.4th at p. 730.) Quoting *Lacrabere, supra,* 141 Cal. 554, 556–557, we confirmed that section 2009 " 'has no relation to proof of facts the existence of which are made issues in the case, and which it is *necessary to establish to sustain a cause of action.*' " *(Johnson, supra,* at p. 730, italics added.)

█ We conclude that respondent's rule and order are inconsistent with the hearsay rule to the extent they render written declarations admissible as a basis for decision in a contested marital dissolution trial. As we shall discuss, our conclusion is consistent with fundamental principles established in other statutes. █ All relevant evidence is admissible, including evidence bearing on the issue of witness credibility (Evid. Code, §§ 210, 351), and the oral testimony of witnesses supplies valuable evidence relevant to credibility,

a critical issue in many marital dissolution trials. Permitting oral testimony rather than relying upon written declarations also is consistent with the historically and statutorily accepted practice of conducting trial by means of the oral testimony of witnesses given in the presence of the trier of fact. (See Evid. Code, §§ 711, 780; Code Civ. Proc., §§ 2002, 2005.) The conclusion we reach also permits us to avoid the difficult question whether the local rule and order violate petitioner's right to due process of law, "[m]indful [as we are] of the prudential rule of judicial restraint that counsels against rendering a decision on constitutional grounds if a statutory basis for resolution exists." (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1190 [86 Cal.Rptr.2d 778, 980 P.2d 337].) ■ This rule directs that "if reasonably possible, statutory provisions should be interpreted in a manner that avoids serious constitutional questions." (*Id.* at p. 1197.)

As noted, evidence bearing on the issue of credibility of witnesses comes within the basic rule that all relevant evidence is admissible, except as specifically provided by statute. (Evid. Code, §§ 210, 351.) Describing a party's fundamental right to present evidence at trial in a civil case, Witkin observes: "One of the elements of a fair trial is the *right to offer relevant and competent evidence on a material issue.* Subject to such obvious qualifications as the court's power to restrict cumulative and rebuttal evidence . . . , and to exclude unduly prejudicial matter [citation], denial of this fundamental right is almost always considered reversible error. [Citations.]" (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 3, pp. 28–29, italics added.) Ordinarily, parties have the right to testify in their own behalf (*Guardianship of Waite* (1939) 14 Cal.2d 727, 730 [97 P.2d 238]), and a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803]; see *Spector v. Superior Court* (1961) 55 Cal.2d 839, 843, 844 [13 Cal.Rptr. 189, 361 P.2d 909].)

As stated by an appellate court in 1943 with reference to a trial court's refusal to permit a witness to testify in a marital dissolution matter: "We are fully cognizant of the press of business presented to the judge who presides over the Domestic Relations Department of the Superior Court . . . , and highly commend his efforts to expedite the handling of matters which come before him. However, such efforts should never be directed in such manner as to prevent a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination. [¶] Matters of domestic relations are of the utmost importance to the parties involved and also to the people of the State of California. . . . To this end a trial judge should not determine any issue that is presented for his consideration until he has heard all competent, material, and relevant

evidence the parties desire to introduce." (*Shippey v. Shippey* (1943) 58 Cal.App.2d 174, 177 [136 P.2d 86], italics added.)

■ Oral testimony of witnesses given in the presence of the trier of fact is valued for its probative worth on the issue of credibility, because such testimony affords the trier of fact an opportunity to observe the demeanor of witnesses. (*Ohio v. Roberts* (1980) 448 U.S. 56, 64 [65 L.Ed.2d 597, 100 S.Ct. 2531].) A witness's demeanor is " 'part of the evidence' " and is "of considerable legal consequence." (*People v. Adams* (1993) 19 Cal.App.4th 412, 438 [23 Cal.Rptr.2d 512]; see *Meiner v. Ford Motor Co.* (1971) 17 Cal.App.3d 127, 140–141 [94 Cal.Rptr. 702] ["[O]ne who sees, hears and observes [a witness] may be convinced of his honesty, his integrity, [and] his reliability . . . because a great deal of that highly delicate process we call evaluating the credibility of a witness is based on . . . 'intuition' "].)

The testimony of witnesses given on *direct* examination is afforded significant weight at trial in ascertaining their credibility; cross-examination does not provide the sole evidence relevant to the weight to be accorded their testimony. "In a contested hearing, the precise words and demeanor of a witness during direct as well as cross-examination bears on the credibility and weight the trier of fact accords the witness's testimony. Moreover, observation of a witness on direct is important to the planning and execution of effective cross-examination." (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1513–1514 [33 Cal.Rptr.3d 89].)

Ordinarily, written testimony is substantially less valuable for the purpose of evaluating credibility. (*Goldberg v. Kelly* (1970) 397 U.S. 254, 269 [25 L.Ed.2d 287, 90 S.Ct. 1011] ["Particularly where credibility and veracity are at issue . . . written submissions are a wholly unsatisfactory basis for decision"]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 414 [58 Cal.Rptr.2d 875, 926 P.2d 1061] [" 'it's pretty difficult to weigh credibility without seeing the witnesses' "].) "A prepared, concise statement read by counsel may speed up the hearing, but it is no substitute for the real thing. Lost is the opportunity for the trier of fact and counsel to assess the witness's strengths and weaknesses, recollection, and attempts at evasion or spinning the facts . . . . [¶] . . . [W]ith a scripted statement, prepared and agreed to by one party in advance, comes the passage of time and with that lapse may come the party's unyielding acceptance of the script. Lost to cross-examination is the opponent's ability to immediately test and dissect adverse testimony." (*Denny H. v. Superior Court, supra,* 131 Cal.App.4th at p. 1514, italics omitted.)

The historical pattern of a trial as an oral examination of witnesses in the presence of the trier of fact rather than an exchange of written declarations is

reflected in Evidence Code section 711, which provides that "[a]t the *trial* of an action, a *witness can be heard only in the presence* and subject to the examination of all the parties to the action, if they choose to attend and examine." (Italics added.) Also in conformity with the historical form of a trial, Evidence Code section 780 directs the trier of fact to evaluate witness credibility by, among other methods, *observing* the witness's demeanor "*while testifying*" as well as his or her "attitude toward the action in which he testifies or toward the giving of testimony." (Italics added.)

Although Code of Civil Procedure section 2002 provides that the testimony of a witness may be taken by affidavit,[11] deposition,[12] or oral examination, deposition testimony is admissible at trial only as prescribed by certain statutes not at issue in the present case. Moreover, affidavits (a term including declarations made under oath), as explained, constitute hearsay and are inadmissible at trial in the absence of stipulation or lack of objection, or as otherwise provided by law.

The only remaining means recognized in Code of Civil Procedure section 2002 for taking the testimony of a witness is *oral examination.* In a provision that again reflects the historical form of the adversary trial in which live witnesses are examined in the presence of the parties and the finder of fact, oral examination is defined as "an examination *in [the] presence* of the jury or tribunal which is to decide the fact or act upon it, the testimony being heard by the jury or tribunal *from the lips of the witness.*" (Code Civ. Proc., § 2005, italics added.)[13]

In sum, consistent with the traditional concept of a trial as reflected in provisions of the Evidence Code and the Code of Civil Procedure, we

---

[11] An affidavit constitutes a "written declaration under oath, made without notice to the adverse party." (Code Civ. Proc., § 2003.)

[12] A deposition constitutes "a written declaration, under oath, made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine." (Code Civ. Proc., § 2004; see Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶ 13:125, pp. 13-34 to 13-35 [use of discovery at trial].)

[13] Marilyn, real party in interest, contends "sworn declarations of witnesses present at the trial and available for cross-examination are not hearsay . . . ." Marilyn reasons that when a declaration is properly sworn, the declarant becomes a witness who "testifies" within the meaning of Code of Civil Procedure section 2002, and at least as long as the declarant is present at the hearing, the declaration does not fall within Evidence Code section 1200's prohibition on hearsay evidence. We agree with the court in *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719 [255 Cal.Rptr. 453], which rejected a similar argument that an affidavit itself constitutes "testimony" at a hearing. (*Id.* at p. 731 ["Code of Civil Procedure section 2002 cannot be used to read into every other statutory use of the word 'testimony' a license to use affidavits or deposition transcripts for all the same purposes as oral examination"].) Moreover, as petitioner points out, Marilyn's theory would authorize courts to adopt a system of trial by declaration in *any* civil action, despite the restrictions of Code of Civil Procedure section 2009 and the hearsay rule.

conclude that respondent's rule and order calling for the admission and use of declarations at trial conflict with the hearsay rule.

C

██ Respondent contends courts have authority to adopt nonstatutory exceptions to the hearsay rule and that prior decisions approve of such exceptions in marital dissolution matters. Cases cited in support of the latter proposition, however (see, e.g., *Reifler, supra,* 39 Cal.App.3d 479), conclude that statutory authorization, namely Code of Civil Procedure section 2009, exists for deciding *motion* matters in marital dissolution proceedings on the basis of declarations. As we have explained, this statute does not authorize the introduction of hearsay evidence at a contested *trial.* Respondent has not offered any persuasive argument in support of its claim that an individual local court may adopt a hearsay exception applicable solely to marital dissolution trials despite state law providing that marital dissolution proceedings are to be conducted in accordance with the ordinary rules governing civil trials, except as specified by statute. (Fam. Code, § 210.)[14]

Respondent relies upon this court's decision in *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947 [38 Cal.Rptr.3d 610, 127 P.3d 28] (*Brown & Yana*) for the proposition that courts have discretion not to hold a full evidentiary hearing in contested family law matters. Respondent's reliance is misplaced, as we shall explain.

██ When parties have been unable (privately or through mediation) to agree on custody, "the court shall set the matter for hearing on the unresolved issues." (Fam. Code, § 3185, subd. (a).) It is undisputed that such a hearing is an ordinary adversarial proceeding leading to a "final judicial custody determination." (*Brown & Yana, supra,* 37 Cal.4th at p. 959; see *id.* at pp. 955–956; *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256 [109 Cal.Rptr.2d 575, 27 P.3d 289]; see also *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32 [51 Cal.Rptr.2d 444, 913 P.2d 473].) But once a *judgment* has been entered in the custody matter, a postjudgment *motion* or request for an order to show cause for a change in custody, based upon an objection to the custodial parent's plan to move away, requires an evidentiary hearing only if *necessary*—that is, only if the moving party is able to make a prima facie showing that the move will be detrimental to the child or has identified "a material but contested factual issue that should be resolved through the taking of oral testimony." (*Brown & Yana, supra,* 37 Cal.4th at p. 962; see *id.* at p. 959.)

---

[14] The same statutory provision defeats respondent's claim that English tribunals historically resolved marital dissolution actions in courts of equity, in which declarations assertedly served as the primary basis for factfinding.

Our decision in *Brown & Yana, supra,* 37 Cal.4th 947, did not suggest litigants must make a prima facie showing of some kind in order to be entitled to proceed to *trial.* Nothing we said undermines the requirement that at a contested marital dissolution trial, prior to entry of *judgment,* the court must hold an evidentiary hearing on the disputed issues, at which the usual rules of evidence apply. Indeed, we explained that a trial court had authority to deny a full evidentiary hearing in *Brown & Yana* in part *because* the custody issue already had been fully litigated and the resulting judgment therefore was entitled to substantial deference in the absence of a showing of a significant change of circumstances. (*Id.* at pp. 955–956, 959–960; see *Burchard v. Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486] [change of circumstances requirement is based upon res judicata principles]; *In re Marriage of Burgess, supra,* 13 Cal.4th at p. 38.) Nor did we discuss Code of Civil Procedure section 2009 or the hearsay rule in that case.[15]

Respondent also refers to Evidence Code section 765 as authority to admit hearsay declarations as a means of presenting the testimony of witnesses under direct examination. That statute provides in pertinent part: "The court shall exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be, and to protect the witness from undue harassment or embarrassment." (Evid. Code, § 765, subd. (a).)

██ This provision never has been interpreted as affording a basis for disregarding the statutory rules of evidence or working a fundamental alteration in the nature of a trial. Respondent's argument would prove too much; under its analysis, Code of Civil Procedure section 2009 would be unnecessary, because Evidence Code section 765 (a recodification of former Code Civ. Proc., § 2044, enacted in 1872) would confer authority to conduct any hearing or trial on the basis of affidavit evidence.

Respondent contends Evidence Code section 765 should be interpreted to afford trial courts the authority to require declarations in lieu of oral direct examination of witnesses, because assertedly similar language in rule 611(a)

---

[15] Respondent also cites *County of Alameda v. Moore* (1995) 33 Cal.App.4th 1422 [40 Cal.Rptr.2d 18]. In that case, the court determined that the informality of family law proceedings had gone too far when disputed factual matters in a district attorney's child support hearing were determined upon the mere unsworn statements of counsel. Although the court referred to local rules applicable to family law motions and contested *trials* under which declarations could be admitted in evidence (*id.* at p. 1427 & fn. 5), the court did not consider Evidence Code section 1200, Code of Civil Procedure section 2009, or Family Code section 210, provisions the court, of course, lacked authority to disregard. *County of Alameda v. Moore, supra,* 33 Cal.App.4th 1422, is disapproved to the extent it is inconsistent with our opinion in the present case.

of the Federal Rules of Evidence (28 U.S.C.) has been interpreted to supply such authority to the federal courts. (See *In re Adair* (9th Cir. 1992) 965 F.2d 777, 779.) Respondent does not claim, however, that federal procedure includes provisions similar to Code of Civil Procedure section 2009, permitting affidavits in certain types of proceedings not leading to judgment, nor does respondent compare the rules of evidence and procedure we have discussed in the previous part of this opinion with the rules applicable in federal district courts. (Cf. also Fed. Rules Evid., rule 807, 28 U.S.C. [granting courts authority to admit reliable hearsay in the court's discretion].)

Respondent claims that if we conclude that declarations should be excluded as hearsay in contested marital dissolution trials, our decision will overturn settled practice and cause serious disruption. It does not appear, however, that respondent's description of settled practice is accurate. As is evident from our consultation of treatises and practice manuals, it is well settled that the ordinary rules of evidence apply in marital dissolution trials.

"The same rules of evidence apply at trial in a marital action as in civil actions generally. Thus, facts must be established by admissible evidence, and objections must be properly stated and based on the Evidence Code or other applicable statutes or court rules. . . . [¶] A litigant has a right to present evidence at trial and, although the court can exclude otherwise admissible evidence because it is unduly time-consuming, prejudicial, confusing, or misleading, outright denial of the right to present evidence is error. [Citations.] The court's discretion to exclude oral testimony entirely . . . does not apply to trials." (Samuels & Mandabach, Practice Under the Cal. Family Code, *supra*, § 16.5, pp. 745–746.) The same source recognizes that some courts nonetheless attempt to place special restrictions upon the introduction of evidence, noting that "[t]raditionally, trial judges have often regarded trials in marital actions as somehow less important than other civil litigation. This attitude has been both recognized and strongly criticized by appellate courts. [Citation.]" (*Id.*, § 16.10, p. 748; see also 11 Witkin, Summary of Cal. Law, *supra*, Husband and Wife, § 99, pp. 152, 154 [provisions governing civil trials apply unless otherwise specified by statute or Judicial Council rule, including the rules of evidence].) Another practice manual explains: "At a contested trial, affidavits are not competent evidence; though made under oath, they are hearsay . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 13:106, p. 13-30; see also *id.*, ¶ 13:81, p. 13-22.1.)

Commenting upon Justice Traynor's concurring opinion in *Fewel, supra*, 23 Cal.2d 431, and this court's decision in *Lacrabere, supra*, 141 Cal. 554, respondent asserts we have limited the admissibility of declarations only when there is no opportunity for cross-examination. Although our decisions indeed have noted the absence of an opportunity for cross-examination, more

broadly they have interpreted Code of Civil Procedure section 2009 as applying solely to hearings on motions, and *not* to a trial of issues leading to a judgment. (See *Lacrabere, supra,* 141 Cal. at pp. 556–567; see also *Fewel, supra,* 23 Cal.2d at pp. 438–439 (conc. opn. of Traynor, J.).) Respondent also claims the opportunity for cross-examination satisfies the policy underlying the hearsay rule. As we have explained, however, in addition to allowing a party to cross-examine adverse witnesses, the hearsay rule assures that the witness will appear in the presence of the trier of fact on direct examination, thereby further aiding it in evaluating the witness's demeanor and determining his or her credibility.

Marilyn contends that the distinction between hearings on motions (at which *Reifler, supra,* 39 Cal.App.3d 479, permits the introduction of hearsay evidence) and trials is illusory in the context of marital dissolution proceedings and should not be the basis for our decision in the present case. As she asserts, in many instances the family court retains jurisdiction over marital dissolution matters for an extended period, responding to repeated motions for interim rulings and for modification of orders. Yet we have drawn a distinction between hearings at which a judgment is entered, and hearings on postjudgment motions. A postjudgment motion for modification of a final child custody order, for example, requires the moving party to demonstrate a significant change of circumstances warranting departure from the judgment. (*Montenegro v. Diaz, supra,* 26 Cal.4th at p. 256.) A presumption exists that the judgment is correct and should not be disturbed—a presumption that would not be well founded were the judgment to be based upon hearsay (unless admitted into evidence upon stipulation of the parties). Marilyn fails to support her claim that, for the purpose of the hearsay rule, there is and should be no procedural or substantive distinction between motions and trials in the context of marital dissolution proceedings.

## D

Marilyn claims petitioner forfeited any claim challenging respondent's rule barring oral examination of witnesses on direct examination, because he did not object on that basis. We do not agree that petitioner forfeited his claim. It should have been evident to the trial court that petitioner's inability to proceed stemmed both from the local rule precluding direct testimony and the order governing the admissibility of evidence.

In any event, even if petitioner failed to preserve his claim with respect to the prohibition on oral examination of witnesses, he certainly objected to the exclusion of nearly all of his evidence for noncompliance with the court's trial scheduling order. The trial court abused its discretion in sanctioning petitioner by excluding the bulk of his evidence simply because he failed,

prior to trial, to file a declaration establishing the admissibility of his trial evidence. The sanction was disproportionate and inconsistent with the policy favoring determination of cases on their merits.

▮ Although authorized to impose sanctions for violation of local rules (Code Civ. Proc., § 575.2, subd. (a)), courts ordinarily should avoid treating a curable violation of local procedural rules as the basis for crippling a litigant's ability to present his or her case. As the court declared in *Kalivas*, *supra*, 49 Cal.App.4th 1152, in the absence of a demonstrated history of litigation abuse, "[a]n order based upon a curable procedural defect [including failure to file a statement required by local rule], which effectively results in a judgment against a party, is an abuse of discretion." (*Id.* at p. 1161.)

This court made a similar point in *Mann v. Cracchiolo* (1985) 38 Cal.3d 18 [210 Cal.Rptr. 762, 694 P.2d 1134], in which an attorney failed to file opposition to a motion for summary judgment within the time prescribed by local rules. We concluded that the trial court abused its discretion in refusing to consider the tardy opposition. (*Id.* at p. 30.) " 'Judges . . . generally prefer to avoid acting as automatons and routinely reject requests by counsel to function solely in a ministerial capacity. Rigid rule following is not always consistent with a court's function to see that justice is done. Cognizant of the *strong policy favoring the disposition of cases on their merits* [citations], judges usually consider whether to exercise their discretion in applying local court rules and frequently consider documents which have been untimely filed.' " (*Id.* at pp. 28–29, italics added.)[16]

▮ Even under the fast track statute, a demanding efficiency scheme that does not apply in family law matters (Gov. Code, §§ 68608, subd. (a), 68609, subd. (b)), the preference for trying cases on the merits prevails. For example, in *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242 [9 Cal.Rptr.3d 821], the reviewing court held that the trial court abused its discretion in refusing, in reliance upon a local fast track rule, to reopen discovery. "Strict adherence to these delay reduction standards has dramatically reduced trial court backlogs and increased the likelihood that matters will be disposed of efficiently, to the benefit of every litigant. [Citation.] Here, the trial court's orders promote judicial efficiency by maintaining strict time

---

[16] Terminating sanctions such as an order granting summary judgment based upon procedural error " 'have been held to be an abuse of discretion unless the party's violation of the procedural rule was willful [citations] or, if not willful, at least preceded by a history of abuse of pretrial procedures, or a showing [that] less severe sanctions would not produce compliance with the procedural rule. [Citations.]' " (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1215 [35 Cal.Rptr.3d 411]; *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 97–98 [5 Cal.Rptr.2d 220] ["Sanctions which have the effect of granting judgment to the other party on purely procedural grounds are disfavored"].)

deadlines. [¶] But efficiency is not an end in itself. Delay reduction and calendar management are required for a purpose: to promote the just resolution of cases on their merits. [Citations.] Accordingly, decisions about whether to grant a continuance or extend discovery 'must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.' " (*Id.* at p. 1246.) The fast track rules were not intended to override the strong public policy in favor of deciding cases on the merits when possible (*Garcia, supra,* 16 Cal.4th at p. 479), and we see no basis for disregarding the same strong public policy in marital dissolution actions.[17]

In the present case, the trial court applied the sanction provision of its local rules in a mechanical fashion without considering alternative measures or a lesser sanction, resulting in the exclusion of all but two of petitioner's 36 exhibits. Had the court permitted petitioner to testify, he could have provided some foundation for his exhibits. In applying the local rule and order mechanically to exclude nearly all of petitioner's evidence—and proceeding, in the words of the trial court, "quasi by default"—the trial court improperly impaired petitioner's ability to present his case, thereby prejudicing him and requiring reversal of the judgment.[18]

## III

Respondent claims "[f]irst and foremost" that efficiency and the "expeditious resolution of family law cases" support its rule and order. It also seeks to justify these requirements on the theory that they serve to reduce rancor and "adversarial confrontation between estranged spouses," and to assist the many self-represented litigants in the family law courts by "giving them direction as to how to prepare for trial, how to frame issues properly, and how to provide evidentiary support for their positions and . . . avoid being 'blindsided' by the adverse party."

---

[17] To demonstrate the harshness of respondent's application of its rule and order, we recall that under the fast track statutes, the burden of sanctions may not be imposed upon the client if it was the attorney who was responsible for violating the fast track rules. (Gov. Code, § 68608, subd. (b); *Garcia, supra,* 16 Cal.4th at pp. 481–482.) Under the fast track scheme, had Jeffrey been represented and had his counsel been responsible for making the mistakes attributed to Jeffrey, the trial court would not have been authorized to impose what amounted to issue sanctions affecting the merits of Jeffrey's case.

[18] Respondent claims its efforts to assist petitioner were rejected, pointing to its offer to allow him to reconsider his position at a break in the court proceedings. But the court never announced a break, and the record supports our view that at best the court merely offered petitioner an opportunity to demonstrate that his declaration actually *complied* with the rule and order by providing a foundation in that document for the admission of his exhibits.

That a procedure is efficient and moves cases through the system is admirable, but even more important is for the courts to provide fair and accessible justice. In the absence of a legislative decision to create a system by which a judgment may be rendered in a contested marital dissolution case without a trial conducted pursuant to the usual rules of evidence, we do not view respondent's curtailment of the rights of family law litigants as justified by the goal of efficiency. What was observed three decades ago remains true today: "While the speedy disposition of cases is desirable, speed is not always compatible with justice. Actually, in its use of courtroom time the present judicial process seems to have its priorities confused. Domestic relations litigation, one of the most important and sensitive tasks a judge faces, too often is given the low-man-on-the-totem-pole treatment . . . ." (*In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 422 [136 Cal.Rptr. 635].)

Moreover, the amicus curiae briefs we have received strongly dispute respondent's assertion that its rule and order promote efficiency, reduce rancor or costs, promote settlement, or aid unrepresented litigants. In their brief, the Northern and Southern California Chapters of the American Academy of Matrimonial Lawyers (Academy) argue that the local rule and order only increase the burden on the trial courts and further strain limited judicial resources, because it is more time consuming for the court to examine lengthy declarations than it is to listen to testimony, leaving courts "with two options: (1) spend more time than they have available at court to read the lengthy materials, or (2) just give the written materials a cursory review, and rule by 'guesstimate.' This is not a choice favored by litigants, lawyers, or judicial officers."

The same brief characterizes as an "absurdity" respondent's claim that the rule and order help self-represented litigants by describing in detail how they must prepare for trial. On the contrary, the brief claims, "[t]he burdens created by the local court rule and [order] are so onerous that they overwhelm most attorneys, let alone self-represented litigants." According to the Academy's brief, the rule and order restrict access to justice by increasing the cost of litigation. The brief points to the added costs of preparing exhaustive declarations of all *potential* witnesses, including an evidentiary foundation for all proposed exhibits, and taking the deposition of nonparty witnesses in the event they refuse to prepare a declaration.

The Family Law Section of the Contra Costa County Bar Association commissioned a professional survey of family law practitioners in the county, and the great majority of those surveyed were decidedly critical of the rule and order, including the successor to the order at issue in the present case, believing the order did not increase judicial efficiency and, along with their clients, questioning whether courts have the time to read the voluminous

binders of declarations and exhibits required by the rule. A substantial majority of family law attorneys in the county also reported finding the rule and order inordinately time consuming, difficult, and costly to comply with.[19]

Respondent suggests its rule and order encourage settlement by "apprising both sides, well in advance of trial, of the facts that will be presented." Local attorneys reported, however, that unfortunately the rule and order have not aided settlement, because parties take extreme positions in their declarations, causing an increase in animosity and a diminished likelihood of settlement. The various amici curiae, including local practitioners, confidently claim that any increase in settlements achieved by the rule and order occur because litigants generally cannot afford the substantial added litigation costs created by compliance with the rules.

We are most disturbed by the possible effect the rule and order have had in diminishing litigants' respect for and trust in the legal system. The Contra Costa survey confirmed that litigants believed the rule and order deprived them of the essential opportunity to "tell their story" and "have their day in court," and felt the rule and order caused the lawyers who drafted the declarations to be the persons testifying, not themselves. "Members uniformly report that their clients are stunned to be told that they will not get to tell their story to the judge," and express "shock, anxiety and outrage" along with the belief that "they had been denied their right to have their case heard by a judicial officer." Overwhelmingly, practitioners criticized the rule and order for creating what their clients understood to be a lesser standard of justice for family law litigants.

A recent statewide survey reflects a similar concern with court procedures that do not permit family law litigants to tell their story, a circumstance reported by litigants to diminish their confidence in the courts. (Judicial Council of Cal., Admin. Off. of Cts., Rep. on Trust and Confidence in the California Courts (2006) Phase II, pp. 31–36 [self-represented litigants "express[ed] frustration that they did not have a chance to fully explain their

---

[19] The Association of Certified Family Law Specialists (ACFLS) filed a brief generally supporting petitioner's contentions. The ACFLS's brief also pointed to specific difficulties caused by respondent's order and rule. "With [respondent's] imposition of a discovery cut-off before any judicially supervised settlement, a litigant is forced to either [forgo] potentially necessary depositions or [incur] unnecessary expense. This creates a larger schism in the ever-widening two-tiered justice system—that for litigants who can afford to opt out of the public court system and retain private judges who do not impose unreasonable and arbitrary deadlines and that for those who cannot afford to do so." Further, the ACFLS complains that respondent's deadlines are very difficult to meet. For example, a party's notice of intent to call the opposing party as a witness, along with a description of "the testimony the party expects to elicit," is due the same day the initial declarations are due. (Super. Ct. Contra Costa County, Local Rules, rule 12.8 F.1.a, b, eff. Jan. 1, 2007; *ibid.*, eff. July 1, 2006.)

side of the story to the judge"; "public trust and confidence in the courts . . . will continue to be negatively affected [by] procedures [that] do not permit [litigants] to tell their story at some length and in their own words"].)

We are aware that superior courts face a heavy volume of marital dissolution matters, and the caseload is made all the more difficult because a substantial majority of cases are litigated by parties who are not represented by counsel. (See Judicial Council of Cal., Rep. on Statewide Action Plan for Serving Self-Represented Litigants (2004) Exec. Summary, p. 2 [80 percent of the cases have at least one unrepresented party by the time of disposition].) In its 2006 report, the Judicial Council estimated that "although family and juvenile cases represent 7.5 percent of total filings, they account for nearly *one-third* of the trial courts' judicial workload . . . ." (Judicial Council of Cal., Ann. Rep. (2006) p. 26, italics added.)

 In light of the volume of cases faced by trial courts, we understand their efforts to streamline family law procedures. But family law litigants should not be subjected to second-class status or deprived of access to justice. Litigants with other civil claims are entitled to resolve their disputes in the usual adversary trial proceeding governed by the rules of evidence established by statute. It is at least as important that courts employ fair proceedings when the stakes involve a judgment providing for custody in the best interest of a child and governing a parent's future involvement in his or her child's life, dividing all of a family's assets, or determining levels of spousal and child support. The same judicial resources and safeguards should be committed to a family law trial as are committed to other civil proceedings.

 Trial courts certainly require resources adequate to enable them to perform their function. If sufficient resources are lacking in the superior court or have not been allocated to the family courts, courts should not obscure the source of their difficulties by adopting procedures that exalt efficiency over fairness, but instead should devote their efforts to allocating or securing the necessary resources. (See Cal. Stds. Jud. Admin., § 5.30(c).) As stated in the advisory committee comment to the California Standards for Judicial Administration: "It is only through the constant exertion of pressure to maintain resources and the continuous education of court-related personnel and administrators that the historic trend to give less priority and provide fewer resources to the family court can be changed." (Advisory Com. com., Cal. Stds. Jud. Admin., foll. § 5.30(c).)

Courts must earn the public trust. (See Cal. Stds. Jud. Admin., § 10.17(b)(5)(A), (B).) We fear that respondent's rule and order had the opposite effect despite the court's best intentions.[20]

## IV

The judgment rendered by the Court of Appeal summarily denying the petition for writ of mandate or prohibition is reversed, and the matter is remanded to that court with directions to issue a writ in terms consistent with this opinion.

Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree that the superior court's local rule and trial scheduling order were inconsistent with statutory provisions of the Evidence Code and Code of Civil Procedure, particularly the hearsay rule of Evidence Code section 1200. (Maj. opn., *ante*, at pp. 1354–1363.) I also agree the trial court abused its discretion in excluding petitioner's exhibits; because the rule and order were inconsistent with state law, enforcing these invalid measures to exclude virtually all of a party's evidence was necessarily an abuse of discretion. But given the existence of the local rule and order at the time of trial, I would not conclude that the trial judge acted arbitrarily or unduly "mechanically" in excluding petitioner's evidence. (See maj. opn., *ante*, at p. 1365.) The trial court excused one breach of the order (petitioner's late submission of his exhibits) and explained to petitioner the other (failure of petitioner's declaration to establish the foundation for his exhibits). The court then offered petitioner an opportunity to cure the violation, an opportunity petitioner, for whatever reason, did not pursue. Despite petitioner's sudden offer to give up his interest in the family home, moreover, the court ordered his interest preserved. In my view, the trial court's rule and order, rather than the particular actions of the court in this case, are to blame for the exclusion of petitioner's evidence.

---

[20] We recommend to the Judicial Council that it establish a task force, including representatives of the family law bench and bar and the Judicial Council Advisory Committee on Family and Juvenile Law, to study and propose measures to assist trial courts in achieving efficiency and fairness in marital dissolution proceedings and to ensure access to justice for litigants, many of whom are self-represented. Such a task force might wish to consider proposals for adoption of new rules of court establishing statewide rules of practice and procedure for fair and expeditious proceedings in family law, from the initiation of an action to postjudgment motions. Special care might be taken to accommodate self-represented litigants. Proposed rules could be written in a manner easy for laypersons to follow, be economical to comply with, and ensure that a litigant be afforded a satisfactory opportunity to present his or her case to the court.

Finally, while I join the majority in recommending that the Judicial Council study ways for trial courts to balance efficiency and fairness in dissolution proceedings (maj. opn., *ante*, at p. 1369, fn. 20), I find it unnecessary to join the majority's policy critique of the Contra Costa County rule and order (*id.* at pp. 1365–1369). The court properly holds the local rule and order invalid because they conflict with state statutes, not because they are poor policy. The criticisms voiced by family law practitioners, although important, would be better considered by the Judicial Council or the Legislature than by this court. As we have sound statutory grounds for holding the local rule and order invalid, I would leave the weighing of competing policy, at least in the first instance, to other institutions.