Filed 10/8/25  T.T. v. E.K. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| T.T.,<br><br>    Appellant,<br><br>        v.<br><br>E.K.,<br><br>    Respondent. | G064197<br><br>(Super. Ct. No. 24V000120)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Eileen M. Solis, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed. Appellant's Motion to Augment. Granted. Respondent's Motion to Augment. Granted in part and denied in part.

Agopoglu Law and Berc Agopoglu for Appellant.

Niven & Niven and Leslie L. Niven for Respondent.

Appellant T.T. (Husband) appeals the denial of his request for a domestic violence restraining order (DVRO) against his former wife, respondent E.K. (Wife).[1] Husband contends the trial court denied him due process by not continuing the hearing on his request for a DVRO to allow him time to retain another attorney and made numerous other errors at the hearing, including excluding certain evidence, limiting Husband's right to cross-examine Wife, and refusing an interpreter for his adult son and sole witness, B.T. We affirm.

FACTS AND PROCEDURAL HISTORY

Husband and Wife separated approximately one year into their marriage.[2] On January 12, 2024, Husband applied for a DVRO and obtained a temporary restraining order (TRO) against Wife. Among other things, Husband alleged Wife had hit him with a television remote, threatened him with deportation based on his immigration status, and engaged in verbal harassment. Pending the hearing on his request for a DVRO, the court ordered Husband be given exclusive use, control, and possession of two automobiles, a Ford Mustang and Nissan GT.

In the meantime, on February 2, 2024, Wife filed a request for a DVRO against Husband. In her request, Wife alleged Husband had sexually assaulted her in October 2023, threw a bag of gloves at a shelf, crashed a

---

[1] Husband was the petitioner in the DVRO proceedings and is the respondent in the parties' separate dissolution action.

[2] Wife filed a petition for dissolution of marriage on February 2, 2024. It appears the superior court clerk initially erred by including in the record on appeal records from the parties' separate dissolution action. We have disregarded those documents and have only considered documents pertinent to the underlying DVRO proceeding.

shopping cart into a pillar in her presence to scare and intimidate her, and controlled her life during their marriage. Wife requested possession and control of the Ford Mustang and Nissan GT. The court issued a TRO in favor of Wife, granting her request in part and denying it in part.

The parties' cross requests for DVROs initially were set for hearing on February 8, 2024. On that date, Husband did not appear at the hearing because he contended he was not properly served with notice. His counsel appeared on his behalf. Counsel for the parties informed the court about a dispute over one or more of the cars that were the subject of the pending TROs.[3] Husband's counsel told the court Wife had caused the Ford Mustang to be towed to a dealership, and the dealership was refusing to release the vehicle to Husband. The entirety of the discussion at this hearing concerned automobiles and other financial issues.[4] There was no substantive discussion at this hearing about alleged domestic abuse, and the court did not conduct the hearing on either party's request for a DVRO.

Rather, the court continued the hearing on both DVRO requests to March 19 and 21, 2024. As part of that order, the court amended the existing TROs as follows: The Mustang was to be released from the dealership to Husband and could only be driven by him, and not B.T. The

---

[3] Wife's counsel produced evidence that B.T. had received multiple traffic tickets while driving one or more of the vehicles in dispute, including a ticket for driving 90 miles per hour in a 65 miles per hour zone, and had been charged with misdemeanor reckless driving.

[4] It is not clear why the topic of the parties' use, possession, and control of *automobiles* was addressed in the TROs and discussed again at this DVRO hearing—rather than addressed as part of the parties' separate dissolution proceeding—when it does not appear the automobiles related to, or needed to be addressed as part of, the allegations of abuse.

Nissan GT was to be returned to and preserved by Wife. The court ordered both TROs would expire on March 19, 2024.

Approximately two weeks before the first day of the continued hearing, Husband filed a notice of substitution of attorney and became self-represented in the action.

On March 19, 2024, the court began the hearing by first addressing Husband's request for a DVRO. After hearing testimony from Husband, B.T., and Wife and considering Husband's declaration previously submitted with his initial request for a TRO, the court denied Husband's request, finding "there is insufficient evidence to substantiate by a preponderance of the evidence that domestic violence has occurred." The TRO in favor of Husband dissolved that day.

Husband timely appealed.

## DISCUSSION

### I.

### THE LAW AND STANDARD OF REVIEW IN DVRO CASES

To obtain a DVRO under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.), a petitioner has the burden to show by a preponderance of the evidence that he or she has been subjected to "a past act or acts of abuse" by the person to be restrained. (*Id*., § 6300, subd. (a); *In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 122.) In this context, abuse "is not limited to the actual infliction of physical injury or assault" (Fam. Code, § 6203, subd. (b)) but also includes placing a person in "reasonable apprehension of imminent serious bodily injury" (*Id*., subd. (a)(3)) and engaging in behavior that harasses or "disturb[s] the peace of the other party." (*Id*., § 6320.)

4

The denial of a request for a DVRO is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6). (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601.) The standard of review is very deferential. "We may not disturb a court's ruling on a request for a DVRO absent an abuse of discretion. [Citation.] '"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)

"'To the extent we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.'" (*In re Marriage of G., supra,* 11 Cal.App.5th at p. 780.) Under that test, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Lyons* (1956) 47 Cal.2d 311, 320.)

II.

HUSBAND'S REQUEST FOR A CONTINUANCE

Husband contends the trial court violated his due process rights and California law by denying his requests to continue both the February 8, 2024 and March 19, 2024 hearings. Husband's contention is entirely without merit.

5

Generally, a trial court has discretion to determine when a continuance should be granted. (*Fisher v. Larsen* (1982) 138 Cal.App.3d 627, 648.) Continuances are generally disfavored. (Cal. Rules of Court, rule 3.1332(c).) Although there "'is no due process right to counsel in civil cases'" (*In re Marriage of Tara & Robert D.* (2024) 99 Cal.App.5th 871, 887), a request to substitute trial counsel may constitute grounds for a trial continuance, "but only where there is an affirmative showing that the substitution is required in the interests of justice." (Cal. Rules of Court, rule 3.1332(c)(4).)

Here, the record directly contradicts Husband's contention the court *denied* his requests for continuances. As to the hearing on February 8, the court explicitly continued that hearing to March 19, 2024, without addressing either of the parties' DVRO requests.[5] Then, at the outset of the hearing on March 19, 2024, the court noted Husband had filed a request for a continuance, heard argument and an objection from Wife's counsel, and stated it was inclined to *grant* Husband's request for a continuance of his request for a DVRO, but would go forward with the hearing on Wife's request. Husband then expressly *withdrew* his request to continue the hearing because he preferred to have both requests heard simultaneously.

Even if Husband had not voluntarily withdrawn his request for a continuance, he failed to show good cause for the continuance. Husband elected to substitute his attorney out of the case approximately two weeks

---

[5] Husband's attorney attended that hearing, at which the court (with input from both counsel) modified Husband's existing TRO against Wife only as to *property issues*. The court's order modifying the TRO, which has since dissolved, and any other orders pertaining to the parties' automobiles are not before us in this appeal.

6

before the hearing and thereafter received several attorney referrals from the bar association. He did not indicate why he was unable to retain an attorney for the hearing or show he had acted diligently in attempting to do so.

In addition, Husband did not affirmatively show he was prejudiced by having to proceed with the hearing on his DVRO request on March 19, 2024. That is, Husband has not demonstrated that, absent the claimed error, a result more favorable to him probably would have ensued. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Montes* (2014) 58 Cal.4th 809, 860 ["Even if the trial court erred in denying the continuance, defendant was not prejudiced, and therefore the error was harmless"].) The gravamen of Husband's request for a DVRO was his assertion that Wife struck him with a television remote, the determination of which boiled down to a credibility determination by the trial court. As discussed below, Wife testified she never hit Husband with the remote and the trial court found Husband's version of events in his declaration and live testimony was not credible. Husband failed to show he likely would have obtained a better result had the hearing been postponed.

### III.

#### EVIDENTIARY ISSUES

Husband contests certain of the court's evidentiary rulings at the March 19, 2024 hearing. We review such rulings for abuse of discretion. (*Jane IL Doe v. Brightstar Residential Inc.* (2022) 76 Cal.App.5th 171, 176.) An error by the trial court in excluding evidence "is grounds for reversing a judgment only if the party appealing demonstrates a 'miscarriage of justice'— that is, that a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.) We find no reversible error.

*A. Audio Recordings and Transcript*

At the hearing, Husband notified the court he wanted to introduce into evidence audio recordings of conversations he had with Wife, as well as a transcript of the audio recordings. Upon questioning by the court, Husband admitted Wife did not know she was being recorded. The court therefore excluded the proffered evidence on the ground Wife "had no knowledge of this recording, nor did she give consent to allow [Husband] to record."

On appeal, Husband contends for the first time the recordings were admissible pursuant to Penal Code section 633.5, which permits one party to a confidential communication to record another party for the purpose of obtaining evidence "reasonably believed to relate to the commission by another party to the communication of . . . domestic violence as defined in [s]ection 13700." (*Ibid*.) Husband did not attempt to lay any foundation at the hearing for the applicability of Penal Code section 633.5, including an offer of proof as to what the recordings purported to show. We are therefore unable to find the court erred in excluding the recordings. In addition, Husband failed to show prejudice resulting from the exclusion of his recorded conversations with Wife—i.e., that a different result would have been probable had the court admitted the evidence. Husband's arguments in his appellate briefing regarding the prejudicial nature of the court's rulings are purely conclusory.

*B. Rulings Regarding B.T.*

Husband argues the court improperly refused to grant a request for a Turkish interpreter for his son, B.T., and erred in sustaining hearsay objections during B.T.'s testimony. We find no reversible error in the court's rulings regarding B.T.'s testimony.

First, it is unclear who made the request for an interpreter for B.T.[6] Assuming Husband made the request, he withdrew it at the hearing. Specifically, when the issue of an interpreter for B.T. came up at the hearing, Husband stated: "There is a mistake. [B.T.] can speak English. We can call him." "[H]e can testify." Even if we assume B.T. made the request on his own behalf, the court did not err in denying it. During the hearing, B.T. initially gestured to the court he did not understand English, but then upon the court's questioning, it became apparent he fully understood English. Further, the evidence supported that conclusion: B.T. had attended high school and college in only English-speaking schools and had one or more pending criminal cases in which he had appeared before a court and not requested an interpreter.

Next, Husband contends the court erroneously sustained hearsay objections to B.T.'s testimony about a discussion he overheard between the parties. Based on the record of the hearing, we are unable to conclude whether it was—or was not—error to exclude this testimony, but regardless, any error would be harmless.

B.T. testified that, on the morning of January 8, 2024, B.T. woke to the sound of Wife screaming at Husband. Husband then asked B.T. what Wife and Husband had each said during that exchange, to which the court sustained a hearsay objection. Because there was no inquiry or offer of proof at the hearing as to what B.T. would have testified he overheard, we are unable to conclude anything he might have overheard Wife say during the argument would have been inadmissible hearsay. For example, because Wife

---

[6] A written request for a Turkish interpreter for B.T. was filed on March 13, 2024, but it is unclear from the record who submitted and signed the form.

was the respondent in Husband's petition for a DVRO against her, evidence that B.T. heard her admit to hitting Husband with the remote would have been admissible as an admission by a party opponent. (Evid. Code, § 1220.) If B.T. overheard Wife engaging in verbal abuse and name calling, her statements would not have been offered (or admissible) for their truth, but rather simply as proof that Wife made the abusive statements.

Even assuming the court should have inquired more as to B.T.'s anticipated testimony and erred in sustaining the hearsay objection, we find no reversible error. Husband failed to show a different result would have been probable had the error not occurred. (*Zhou v. Unisource Worldwide, supra*, 157 Cal.App.4th at p. 1480.) Husband has failed to show the excluded testimony would have mandated the issuance in his favor of a DVRO— particularly given the court's discretion and its ultimate conclusion that Husband lacked credibility.

*C. Lines of Inquiry by Defense Counsel*

Husband contends the trial court erroneously allowed prejudicial questioning by defense counsel into irrelevant matters, including Husband's immigration status and social security number. We are not persuaded.

As to Husband's social security number, Husband misrepresents the record. The court did not allow questioning regarding Husband's social security number; it expressly *disallowed* it.

As to the questioning regarding Husband's immigration status, the questioning was limited and fair game because Husband had put his immigration status directly at issue in his request for a DVRO, in which he alleged Wife threatened him based on his immigration status. Again, even if the court should have excluded this line of questioning, Husband failed to

10

establish the questioning on this topic affected the court's decision to deny his requested DVRO.

## D. Exclusion of Police Reports and Records

Husband argues in a conclusory manner that the trial court's refusal to admit police records relating to his complaint of domestic violence was error and impaired his right to present a "full defense." Again, we find no merit to his argument. As an initial matter, Husband only appealed the court's denial of his request for a DVRO, not any orders relating to Wife's request. Husband's ability to present a defense is therefore not at issue in this appeal. Moreover, B.T. was the only witness Husband called during his case in chief. He did not call any police officer for the purpose of identifying or authenticating police records, and he did not subpoena any documents or police records for the hearing. After the court sustained an objection early in the hearing to certain unspecified recordings identified on Husband's exhibit list based on lack of foundation, Husband made no attempt to offer any foundation for their admission. In sum, Husband has not shown any error with respect to the admissibility of unspecified police records.

## E. Husband's Ability to Cross-Examine Wife

Husband contends the court violated his due process rights in connection with his cross-examination of Wife. We disagree. During the hearing on Husband's requested DVRO against Wife, Husband decided not to call Wife as a witness, instead opting to cross-examine her after her own lawyer had examined her. At first, Wife's counsel asked her only one question, i.e., whether she had *thrown* the remote at Husband. She responded she had not. On cross-examination, Husband attempted to ask Wife if she had *hit* him while holding the remote, but the court sustained an objection from Wife's counsel that it was outside the scope of the direct

11

examination. Any claimed error in the court's refusal to permit Husband to ask that question on cross-examination was quickly rectified because Wife's counsel then asked his client if she had *touched* Husband in any way with the remote, to which she responded she had not. At that point, the court allowed Husband to examine Wife on her testimony denying she touched him with the remote, but he declined to do so. When the court asked Husband if he had anything else, he said "No." We find no error with respect to Husband's ability to cross-examine Wife.

## F. Husband's Claim of Disadvantage as a Self-Represented Party

Husband argues that, as a self-represented party, he was entitled to "reasonable guidance" from the court on how to present his case. (Boldface and italics omitted.) He relies on *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 for this proposition.

*Elkins v. Superior Court, supra,* 41 Cal.4th 1337 addressed the importance of allowing oral testimony at trial (*id.* at p. 1358) and does not support Husband's contention the trial court was obligated to give him guidance at the hearing, including—as Husband appears to suggest—advice or assistance regarding what to ask a witness and how to conduct the hearing. To the extent the court had any obligation to help Husband navigate his way through the hearing as a self-represented party, the record here shows the court did so. The court took an active role in developing the facts before issuing its decision, and it helped guide Husband in answering the court's questions about his evidence and his case. The court was patient and helpful to Husband, even sustaining its own objections to questions by Wife's counsel that the court found irrelevant to Husband's requested DVRO. The court explained its rulings and the conduct of the proceedings to Husband at every step.

In the end, the court expressly found Husband's declaration and live testimony about what occurred "was not truthful or not straightforward." We do not disturb the court's credibility findings or "'reweigh the evidence.'" (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 116.)

IV.

RESPONDENT'S MOTION TO AUGMENT RECORD

Both parties filed motions to augment the record on appeal.

We grant Husband's motion to augment the record with the documents he filed with the trial court on January 12, 2024, in connection with his request for a TRO.

We grant Wife's motion in part and deny it in part. Her motion is granted as to those court records that relate to the parties' cross-requests for a DVRO up to and including the March 19, 2024 order that is the subject of this appeal—specifically, pages 1 through 231 of Wife's motion. Wife's motion is denied as to the court records that were filed after the March 19, 2024 order—specifically, pages 232 to 483 of Wife's motion to augment. We have disregarded any references to those documents as part of our consideration of the appeal. To the extent pages 232 to 483 include documents that are relevant to this appeal, including Husband's notice of appeal and orders from this court, we need not add them to the appellate record because they are duplicative of those already in the record.

## DISPOSITION

The order is affirmed. Husband's motion to augment the record is granted. Wife's motion to augment the record is granted as to pages 1 through 231 and denied as to pages 232 through 483. Wife is awarded her costs on appeal.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.

14